# HARLAN LEE SAVAGE *v.* STATE OF MARYLAND

[No. 879, September Term, 1972.]

*Decided August 20, 1973.*

The cause was argued before ORTH, C. J., and THOMPSON and MENCHINE, JJ.

*Charles F. Morgan* for appellant.

*Donald R. Stutman, Assistant Attorney General,* with whom were *Francis B. Burch, Attorney General, Edward F. Borgerding, Chief, Criminal Division, Assistant Attorney General,* and *J. Owen Wise, State's Attorney for Caroline County,* on the brief, for appellee.

ORTH, C. J., delivered the opinion of the Court.

The current saga of HARLAN LEE SAVAGE in the courts of Maryland began on 10 December 1970 when he was held for action of the grand jury upon a warrant charging that he assaulted and robbed Dale Murphy. He waived indictment by the grand jury and sought immediate trial upon a criminal information. Maryland Rule 709. On 16 December a criminal information was filed presenting that on 28 November 1970 he robbed Murphy (1st count), assaulted Murphy with intent to steal (2nd count), assaulted and beat Murphy (3rd count), and stole goods under the value of $100 from Murphy (4th count). On 18 December the information came on for trial in the Circuit Court for Caroline County. Savage pleaded not guilty as to the first

and second counts and requested a trial by jury. He pleaded guilty to each of the third and fourth counts. The court accepted the guilty pleas and rendered a verdict of guilty under each of the third and fourth counts. The State entered a nolle prosequi in open court to the first and second counts, without objection by Savage. Maryland Rule 711. On 22 December sentences were imposed. The docket entry reads:

"Judgment and sentence of the Court is that the Defendant, as a punishment for his offense, under 3rd. Count of Information be committed to Jurisdiction of Md. Dept. of Correction to be imprisoned for a period of 18 months.

Judgment and sentence of the Court is that the Defdt., as a punishment for his offense, under fourth count of Information be committed to Jurisdiction of Md. Dept. of Correction to be imprisoned for a period of 18 months, sentence under 4th. Count of Information to run consecutive to sentence under third count of Information, credit to be given for 24 days spent in Caroline County Jail." [1]

On 28 December the court ordered that Savage be delivered to the custody of the Director of Patuxent Institution for examination and evaluation of possible defective delinquency in accordance with Code, Art. 31B. On 2 August 1972 the Circuit Court for Caroline County, Rasin, J., passed an order which recited:

"Harlan Lee Savage, having been sentenced in this Court on December 22, 1970, to two eighteen month sentences to run consecutively (credit to be given for 24 days spent in the Caroline County Jail) and, on December 28, 1970, the Court having passed an Order for examination of the said Harlan Lee

---

1. On 18 January 1971 Savage applied for a review of the sentences. The decision of the review panel on 17 February was that the sentences stand unchanged and affirmed. On 15 March Savage moved for a modification of the sentences. The motion was denied by the court below on 10 April.

Savage at Patuxent Institution for the purpose of determining whether he is a defective delinquent; Patuxent Institution, by letter dated April 18, 1972, having reported to this Court that the said Harlan Lee Savage has refused to submit to testing and other examination so that it is not possible for Patuxent Institution to complete its evaluation and express an opinion as to whether the said Harlan Lee Savage, in the opinion of the staff, meets the definition of a defective delinquent under the provisions of Article 31B of the Maryland Code; the Supreme Court of the United States, in the case of Edward Lee McNeil, Petitioner vs. Director, Patuxent Institution, on June 19, 1972, having ruled that a hearing should be held with respect to any inmate who refuses to cooperate in the evaluation process by Patuxent Institution so that it can submit a report to the Court; the said Harlan Lee Savage, on June 29, 1972, having filed a petition for the issuance of a writ of habeas corpus claiming that he is entitled to be released because his sentence has expired and he has not been committed as a defective delinquent to Patuxent Institution, and it appearing to the Court that a hearing should be held forthwith to determine why the said Harlan Lee Savage has not been examined, evaluated and a hearing held to determine whether he is a defective delinquent, * * *."

Upon these recitals, the court commanded that Savage show cause at a hearing to be held on 22 September why he should not cooperate with the staff at Patuxent. The State answered the order to show cause, representing:

"That Respondent has consistently refused to cooperate in the diagnostic procedures at Patuxent Institution in that he has refused psychological examination on April 17, 1971, January 31, 1972, and June 6, 1972; that he further refused to be examined by a psychiatrist at Patuxent Institution

on June 7, 1971, January 5, 1972, January 23, 1972, and June 1, 1972; and that he further refused to take the Stanford Achievement Test on June 8, 1971."

It attached as an exhibit a Diagnostic Staff Report signed by the Director of the Institution and two staff members, a psychologist and a medical doctor. The report concluded:

"Therefore, because of the patient's refusal to obey the Court's order for examination and since there are no past examinations that one might be able to evaluate, no recommendation in regard to defective delinquency can be made at this time."

The answer requested that the court order Savage to submit to psychological testing and psychiatric interviews at Patuxent and that if he refused so to submit that he be held in contempt of court and confined at Patuxent until such time as he submits himself to the testing procedures. The show cause order came on for hearing on 3 October. Savage was vociferous in his refusal to participate in the hearing, claiming that he was not prepared and disclaiming the public defender representing him.[2] The hearing proceeded, and on 3 October the court ordered:

"That the Defendant, Harlan Lee Savage, shall be returned to Patuxent Institution for the following purposes: That he shall submit after request of the staff of Patuxent Institution to the personal examinations required by Article 31B, Section 7 (a), Annotated Code of Maryland, and more specifically shall submit to the following testing procedures: (1) Weschler Adult Intelligence Scale; (2) the Bender-Gestalt Test; (3) Draw A Person Test; (4) the Rorschack Ink Blot Test; (5) a Social Service interview; (6) an electroencephalogram; (7) a

---

2. The court found it necessary to have him removed from the courtroom.

psychiatric interview; and that he shall cooperate with the staff in the examinations; and

IT IS FURTHER ORDERED, That any information elicited from the Defendant during the course of his examination and evaluation at Patuxent Institution shall not be used, directly or indirectly, as a basis for subsequent criminal prosecution of the Defendant; and

IT IS FURTHER ORDERED, That Patuxent Institution notify this Court within 30 days whether the Defendant has cooperated in the evaluation procedures in order that Patuxent Institution is able to file its formal staff evaluation as required by Article 31B, Section 7 (a)."

A motion of the District Public Defender to strike his appearance was granted on 18 October and appearance of other counsel for Savage was entered. On 30 October an appeal was noted from the order of 3 October. It was dismissed by order of this Court of 15 December for reason that it was an appeal from an interlocutory order.

In the meantime, Savage was one of 50 patients at Patuxent who filed petitions for the issuance of a writ of habeas corpus in the Circuit Court for Montgomery County before Judge Plummer M. Shearin. The petitions alleged in substance that Patuxent had not evaluated the petitioners, pursuant to Art. 31B, § 7 (a), within six months of their transfer to Patuxent for examination, and as a consequence, they were entitled to be removed. Judge Shearin concluded that the language of § 7 (a) was mandatory and hence the petitioners were entitled to be released from Patuxent and transferred to the Division of Correction for the service of their original sentences. He so ordered on 4 October. The Director of Patuxent appealed to this Court and then filed a petition for a writ of certiorari with the Court of Appeals which was granted pursuant to Code, Art. 5, § 21B. The Court of Appeals granted the petition for the issuance of the writ on 12 December 1972. The Court of Appeals, holding that the reporting provisions of Code, Art. 31B, § 7 (a) were

directory and not mandatory, reversed the order of 4 October 1972. *Director v. Cash,* 269 Md. 331, 305 A. 2d 833.

On 6 November 1972, while the appeal of Judge Shearin's disposition of the *habeas corpus* petitions was pending, the State filed a motion in the Circuit Court for Caroline County, alleging that Savage "has consistently and repeatedly refused to engage in the personal examination ordered by this Court." It prayed for an order requiring Savage to show cause why he should not be held in contempt. On 6 November the court issued the order for Savage to show cause on or before 21 November. A hearing on the order was held on 29 November, and on 14 December, upon the hearing, the court found Savage in contempt for failing to obey its order of 3 October requiring him to submit to the examinations at Patuxent. It ordered that he "be detained by the Division of Correction until such time as he is willing to comply" with the order of 3 October, and further ordered that when he agreed to comply, "The Commissioner of Corrections shall forthwith transfer Defendant to Patuxent Institution for a period of twenty-four hours to be examined by the staff of Patuxent Institution and shall then return him to whatever place he is to be confined by the Commissioner of Corrections, subject to the further Order of this Court." Savage noted a timely appeal. He contends:

I. The court below did not have jurisdiction to order him to submit to an examination at Patuxent Institution or to punish him for his refusal to obey such order because:

(a) the sentence for his "underlying criminal conviction" had expired;

(b) Code, Art. 31B does not provide for the issuance of such an order;

(c) he had been released from custody of Patuxent Institution under a writ of *habeas corpus.*

II. The order of 14 December 1972 holding him in contempt must be vacated because:

(a) it was entered in violation of due process of law;

(b) it was based upon a hearing which violated due process of law;

(c) it was entered in violation of his privilege against self-incrimination.

I

(a)

The contention that the court below did not have jurisdiction to order Savage to submit to an examination at Patuxent or to punish him for his refusal to obey such an order follows from two interrelated premises: (1) that the original criminal sentence had expired; and (2) that the sentence having expired before he was determined to be a defective delinquent by a judicial proceeding, the ruling in *McNeil v. Director*, 407 U. S. 245, prohibited his confinement in Patuxent.

The predication of the order committing Savage to Patuxent for examination and evaluation read:

"The Defendant herein, having been convicted in this Court of a crime of violence, to wit, assault and battery, and having been sentenced on December 22, 1970, to the jurisdiction of the Department of Correction, and there being reasonable cause to believe that the Defendant may be a defective delinquent as defined in Section 5 of Article 31 B of the Annotated Code of Maryland; . . . ."

Savage argues that the sentence on the assault conviction expired 28 May 1972. It is correct that the sentence imposed on the assault conviction was 18 months. A consecutive 18 month sentence, less 24 days credit for jail time, however, was imposed on the larceny conviction. The two convictions were of offenses, committed on the same day, which were charged in one information. They in fact arose out of the same incident. Savage accosted a 16 year old boy who was

riding a bicycle, struck him in the face, knocked him to the ground, and stole a shotgun he was carrying. The intent of the court and the effect of the punishment it imposed was that Savage be imprisoned for 3 years for his acts against the person and property of Murphy. The commitment reads:

> "Judgment and sentence of the Court is that the Defdt. as a punishment for his [offense] be committed to the Jurisdiction of Md. Dept. of Correction to be imprisoned for a period of 18 months under Third Count of Information & 18 months under Fourth Count of Information (a total of 3 yrs.) credit to be given for 24 days spent in Caroline County Jail." [3]

Under Code, Art. 31B, § 6 (a) a request may be made that a person be examined for possible defective delinquency if he has been convicted and sentenced in a court of this State for a crime or offense coming under one or more designated categories. Category (3) is "a crime of violence"; category (5) is "two or more convictions for any offenses or crimes punishable by imprisonment, in a criminal court of this State." [4]

---

3. The sentence as imposed for Savage's acts against Murphy would expire 28 November 1973. We do not speculate as to any diminution of the period of confinement to which Savage may have been entitled under Code, Art. 27, § 700, had he not been committed to Patuxent for evaluation, nor does Savage raise the point.

4. At the hearing on 3 October 1972 the Director of Patuxent testified as to Savage's prior criminal record:

> "In 1966 at age 18 he was convicted of petty larceny and served 30 days in the Georgetown, Delaware, jail. In 1967 at the age of 19 he was convicted of non-support and traffic violations and served 90 days in the Georgetown, Delaware, jail. In 1968 he was convicted of reckless driving and paid a fine of $25.00 and costs. In 1969 he was convicted of receiving stolen goods and received a sentence of 179 days. At that time he alleged that he was detained 74 days to await trial and at his trial received a suspended sentence for the remainder of the term, and was released from probation by not reporting — that seems to be an error, I think he did not report for probation and then served 105 days in the Cambridge, Maryland, jail. In December 1969 he was convicted of traffic violations and given a 7-month sentence at the New Castle, Delaware Penitentiary. In February of 1970 he was convicted of non-support and given a 10-month concurrent sentence with

Even if the ruling in *McNeil v. Director, supra,* were to apply to compel Savage's release if his sentence had expired, it is not controlling, in any event, because we do not believe that Savage's underlying criminal sentence had expired within the contemplation of *McNeil.* Savage was eligible for examination for possible defective delinquency not only because he had committed a crime of violence, but because he had two or more convictions for offenses punishable by imprisonment, in a criminal court of this State. The convictions obtained and the sentences imposed for both the crimes concerning Murphy permitted a request to be made for his examination. The offenses arose from one incident, the convictions were reached at one trial, and the sentences were imposed at one penalty stage of the proceeding. We think it clear that the extent of the punishment on the assault conviction was influenced by the consecutive sentence given on the larceny conviction. The trial court obviously considered the convictions together in imposing punishment, and its patent intent was that the punishment be 3 years imprisonment less 24 days jail time. That intent was achieved by the consecutive running of the sentences. In the circumstances, we hold that, within the contemplation of *McNeil,* Savage's criminal sentence, resulting in his confinement in Patuxent, was 3 years and had not expired as of 2 August 1972. We refuse to accept the narrow view that the sentence must be considered as 18 months because the order of referral mentioned only the assault conviction. Our position is supported by the Court of Appeals in its opinion in *Director v. Cash,* 269 Md. 331, 305 A. 2d 833. Savage was one of the 50 petitioners in that case who filed petitions between 10 July 1972 and 15 September 1972. The Court said: "On the date the petitions were filed, none of the petitioners had served the sentences imposed upon them for

---

depreciating sentence. While in New Castle Delaware Penitentiary he worked in sewing, woodshop and kitchen and returned to the Georgetown, Delaware, jail in September 1970 and was placed on work release until November 10, 1970. His next offense is the current one in which the patient agreed to a guilty plea on simple assault and petty larceny after the State nol. pros. robbery counts."

their original criminal convictions." It gave the original sentences involved as ranging from 2 years to 40 years. In distinguishing *McNeil* from the cases before it, the Court said: "[I]n *McNeil* the sentence of McNeil had expired, whereas in the present case, none of the sentences of the petitioners had expired." Had the sentence of Savage with regard to the defective delinquent issues raised by him in *Cash* been deemed to have been 18 months, it would have expired before 10 July 1972. The contention falls with the premise that the underlying criminal conviction had expired.

### (b)

Savage claims that the court below was without jurisdiction to order him to submit to an examination at Patuxent because there is no statutory authority for such an order. We think that the authority is implicit in Code, Art. 31B. Section 7 (a) requires that the examination for possible defective delinquency shall be made by at least three persons on behalf of the Institution, one of whom shall be a medical physician, one a psychiatrist, and one a psychologist. They shall assemble all pertinent information about the person to be examined, and on the basis of that information, plus their own personal examination and study of such person they shall determine whether in their opinion the person is or is not a defective delinquent. We are in full accord with the views of Sobeloff, J., expressed in his opinion in which he concurred in part and dissented in part in *Tippett v. State of Maryland*, 436 F. 2d 1153 (4th Cir. 1971). He said, at 1161-1162:

> "The reluctance of Patuxent inmates to respond to the staff's probing is understandable. Admissions made concerning mental state and past criminal behavior provide significant evidence for the state to use at the judicial hearing on defective delinquency. The petitioners maintain that they have an absolute right to silence, and cannot be forced to reveal information which may be used against them. But determining defective delinquency involves essentially an inquiry into the

state of the inmate's mind. Denied direct access, the state psychiatrists would be relegated to secondhand information in arriving at a diagnosis. In United States v. Albright, 388 F.2d 719 (4th Cir. 1968), this court emphasized the necessity for a government psychiatric examination where the mental condition of a criminal defendant was in issue. It was reasoned that the defendant had waived his right to silence by raising the insanity issue as a defense, but the underlying thrust of the *Albright* opinion was the recognition that a reliable inquiry into the defendant's mental state is possible only with his active cooperation." (footnote omitted)

Judge Sobeloff thought that "because of the unusual nature of the necessary inquiries, the legitimate objectives of the legislation would be frustrated were inmates permitted to refuse cooperation. Granting the inmate the right to silence would in many instances thwart the personal examinations and interviews considered indispensable in determining whether the prisoner is or is not a defective delinquent." At 1162.

We hold that the court below had authority under Code, Art. 31B to issue its order of 3 October 1972.

(c)

Savage contends that the court below had no jurisdiction to order him to submit to examination at Patuxent because he had been released from the custody of Patuxent under a writ of habeas corpus. The short answer is that the Court of Appeals in *Director v. Cash, supra,* found that the release of Savage from the custody of Patuxent was improper and reversed the order so releasing him.

II

(a)

(i)

Savage claims that the order of 14 December 1972 must be

14

vacated because it was entered in violation of due process of law. He asserts that the contempt proceedings initiated by the order came too late because he was ordered to Patuxent on 28 December 1970 for evaluation, received in the Institution on 6 April 1971, and the report of examination, dated August 4, 1972, was not submitted to the court until 21 August. He argues that this violated Code, Art. 31B, § 7 (a) requiring that the report be made not later than 6 months from the date he was received in the Institution. He deems the reporting provision to be mandatory. The Court of Appeals ruled otherwise in *Director v. Cash, supra:* "We have concluded that the language in Art. 31B, § 7 (a), as amended by Chapter 491 of the Laws of 1971, is directory and not mandatory." It is our holding that the receipt by the court of the report of examination more than six months from the date Savage was received in the Institution did not render invalid the order of 14 December 1972.

### (ii)

Savage further contends that the order holding him in contempt must be vacated because the power to hold him at Patuxent under the order of 28 December 1970, referring him for examination, had expired "long before December 15, 1972, and that the State's attempt to surround his continued confinement with procedural safeguards came too late." He relies on *McNeil v. Director, supra.* Pursuant to the holding in *Director v. Cash, supra, McNeil* is not controlling in the light of our conclusion that Savage's original criminal sentence had not expired. See *Martin v. Director,* 18 Md. App. 505, 308 A.2d 212.[5]

### (iii)

Savage also argues that under the principles of *McNeil,* due process of law was violated by the length of time he was

---

5. The Court of Appeals in *Cash* went further than making clear that *McNeil* applied only to those cases in which the criminal sentence had expired. It said: "Even in regard to persons held at Patuxent whose original criminal sentences had expired, *McNeil* indicates to us that the decision is to be narrowly applied." 269 Md. at 345.

held in Patuxent without a judicial determination of defective delinquency. He concedes that *McNeil* "did not set the precise permissible length of a commitment for examination" but claims that "the outer limit is the expiration of the underlying criminal sentence." Even were this correct, the outer limit had not been reached here. We abide by the narrow application to be afforded *McNeil* as indicated by the Court of Appeals in *Cash,* and limiting its rulings to its factual posture, hold that it does not follow from *McNeil's* rulings that in the circumstances of the instant case Savage was denied due process of law.

Savage complains that while confined at Patuxent he was not eligible for certain benefits and advantages available to those confined in the various correctional institutions. We note that, if, upon an adversary hearing as to defective delinquency which may be had when it is possible to obtain an evaluation of him, he is found not to be a defective delinquent, "the court shall order him returned to the custody of the Department of Correction, and he shall begin or resume his period of confinement on said conviction as if he had not been examined for possible defective delinquency. Provided, however, that the said defendant shall be returned to custody under his original sentence with full credit for such time as he has already spent in the institution for defective delinquents or within the custody of the Department of Correction including such allowances (or disallowances) relating to good behavior and/or work performed as the Board of Correction may determine under the provisions of § 688 of Article 27 of the Code." Code, Art. 31B, § 9 (a).

### (b)

Savage claims that the order holding him in contempt must be vacated because it was based upon a hearing which violated his right to due process of law. He asserts, and the State agrees, that the contempt of which he was found guilty was constructive and civil as distinguished from direct and criminal. *Roll v. State,* 15 Md. App. 31, 47-50, *affirmed in part and reversed in part, State v. Roll,* 267 Md. 714. As we

have recounted, the court below on 2 August 1972 ordered that a hearing be held to determine why Savage had not been examined, evaluated, and a hearing had as to whether he was a defective delinquent. The hearing prescribed by order of 2 August was held on 3 October resulting in an order the same date that Savage submit to examination at Patuxent. On 6 November the State moved for an order for Savage to show cause why he should not be held in contempt for failing to obey the order of 3 October. The order prayed was issued the same date. On 29 November there was a hearing on the order of 6 November, and on 14 December Savage was held to be in contempt. The court ordered that he be detained by the Division of Correction until such time as he is willing to comply with the order of 3 October.

The procedure followed by the court was in substantial compliance with Rule P4 concerning constructive contempt actions. The provisions of the Rule are declaratory of the basic requirements of due process of law in the prosecution of constructive contempts. *Reamer v. Reamer*, 246 Md. 532, 535. We think that due process of law was not violated in reaching the finding that Savage was in contempt.

Savage contends that he was not afforded genuine and effective representation at the show cause hearing. On our independent constitutional appraisal of the record we find that he was. Savage adamantly but unreasonably refused to confer with the attorney representing him, persisted in conduct which required his removal from the courtroom, and refused to conform his conduct to even a minimal standard consistent with trial decorum. Nonetheless, we do not believe that counsel's efforts on his behalf, despite the adverse circumstances caused by Savage himself, were inconsistent with the sixth amendment guarantee. The hearing court so found, and we are in accord.[6]

------

6. The court said:

"Mr. Savage, having requested counsel, representation by the Public Defender, the Public Defender obviously having found that he was indigent and entitled to representation, I see no reason to abort this proceeding merely to conform with the whims and desires, real or fanciful of Mr. Savage. The Courts certainly have to protect their own integrity. We have to, and we want to, afford every person due process and fairness, and an opportunity for him

At the hearing on 29 November 1972 the State adduced evidence tending to show that Savage had not complied with the order of 3 October. Counsel then representing Savage, after urging that the court had no jurisdiction to issue the order of 3 October, desired to "build a factual record of why we think he was illegally incarcerated, the prejudices he suffered while he was there [at Patuxent] and the negligence of the institution in examining him." The court said that it had previously made those determinations.[7] The court opined that the issue before it "is just a simple issue of whether or not [Savage] complied with an Order of Court passed on October 3, 1972." We agree, and find no denial of due process in the court limiting the evidence to that issue at the contempt hearing.

(c)

Savage contends that the fifth amendment privilege against self-incrimination applies during the examination stage in a defective delinquency proceeding.

We have recognized herein the importance of a personal examination of one as to whom a mental appraisal is to be made. In *Application of Gault*, 387 U. S. 1, 47-48, the Court quoted with approval the statement of Mr. Justice White in his concurring opinion in *Murphy v. Waterfront Commission*, 378 U. S. 52, 94:

> to be heard and to prosecute his contentions in every reasonable manner. In my opinion the Courts have bent over backwards in doing that, and in this proceeding, I have tried to do everything that I can to protect Mr. Savage's rights, but still we cannot afford, for the sake of society and for the sake of the orderly proceedings in Court permit persons who are offenders, who have violated the rights of other persons, who have violated the statutes of the State, to run the Courts, and that's what it would amount to."

7. The court said: "Well, these are the guidelines that the court has laid down and the court has determined that there was no examination, there was no cooperation, that they couldn't make an examination at the previous hearing, and having found that, the court and the institution having found that in Savage's case the institution did not have sufficient raw information from other sources to make an evaluation, that they could not make an evaluation unless he took certain examinations, determining what those examinations were he should take and requiring him to take them. It now is a simple question of whether or not he cooperated in the — in the taking of the examinations and doing the specific things that were set out in the Order. The Order further protected him from any prosecution, from any information that he might divulge during that examination procedure. Now we are not going back anymore."

18

"The privilege can be claimed in *any proceeding*, be it criminal or civil, administrative or judicial, investigatory or adjudicatory. * * * It protects *any disclosures* which the witness may reasonably apprehend *could be used in a criminal prosecution or which could lead to other evidence that might be so used.*" (Emphasis added.)

We pointed out in *Wise v. Director*, 1 Md. App. 418, 422, *cert. den.*, *Wise v. Boslow*, 390 U. S. 1030, however, that the purpose of the personal examination for evaluation of possible defective delinquency "is not to determine or to gain evidence to prove that the subject has committed a crime, but rather to discover the inmate's mental and emotional condition. Defective delinquency proceedings are civil in nature, *Director v. Daniels*, 243 Md. 16 (1966), and as the applicant's statements did not subject him to criminal liability, there is no constitutional infirmity in the manner in which the examination at Patuxent was conducted, *McCloskey v. Director*, 245 Md. 497. And a person undergoing examination at Patuxent has no absolute right to remain silent. *State v. Musgrove*, 241 Md. 521."

In *United States v. Albright*, 388 F. 2d 719, 723, (4th Cir. 1968), the court held that "a defendant's right not to incriminate himself is not violated *per se* by requiring him, in an appropriate case, to submit to a mental examination." The "appropriate case" in *Albright* was a hearing as to sanity to determine responsibility for criminal conduct in which the question of guilt or innocence had not been determined. In hearings for the determination of defective delinquency the question of guilt of one or more specified crimes is a condition precedent. It follows, said the United States District Court for the District of Maryland in *Sas v. Maryland*, 295 F. Supp. 389, 411 (1969), *affirmed, sub nom.*, *Tippett v. Maryland*, 436 F. 2d 1153, (1971), *cert. dismissed sub nom.*, *Murel, et al. v. Baltimore City Criminal Court, et al.*, 407 U. S. 355 (1972), that "[i]f a *compulsory* examination under Albright is not a violation of the right against self-incrimination, certainly examination at Patuxent would

not be." It quoted extensively from *Albright* and concluded, 295 F. Supp. at 413: "This Court accordingly holds that the examination procedures at Patuxent did not violate any right against self-incrimination. This Court entertains no doubt as to this conclusion; but were there any question it would not make the Maryland Act unconstitutional. An objection, if valid, could be made at the time of any later attempt to use such information in any proceeding to convict for crime." We are in full accord.

The order of 3 October 1972, commanding that Savage submit to personal examination for evaluation of defective delinquency, included the following language:

> "IT IS FURTHER ORDERED, That any information elicited from the Defendant during the course of his examination and evaluation at Patuxent Institution shall not be used, directly or indirectly, as a basis for subsequent criminal prosecution of the Defendant; * * *."

Savage, citing *Bowie v. State*, 14 Md. App. 567, in which we said, at 575, that "[i]mmunity is exclusively a creation of statute and can only exist where a statute has brought it into being", argues that because Maryland has no general immunity statute, the lower court had no power to grant immunity and, therefore the State could not compel his testimony over a claim of fifth amendment privilege. Not only is it correct that there is no statutory grant of immunity as to information elicited from a person during the course of his examination and evaluation at Patuxent, but, although Code, Art. 35, § 13A (b) provides that communications between a patient and a psychiatrist, psychologist or other patients shall be privileged "in civil and criminal cases", a specific exception thereto is spelled out in § (c) (5) "in all phases of any civil or criminal proceedings under Article 31B of this Code relating to defective delinquency proceedings." Despite, however, the absence of statutory authority to grant immunity, we think that under our holding, *supra*, a court has authority under Code, Art. 31B to order examination for evaluation of

possible defective delinquency, that recognition should be given to the privilege against self-incrimination when communications, even though not privileged, made during the course of that examination, are attempted to be used to obtain a conviction for crime. Therefore, the privilege against self-incrimination is no bar to compelling the examination for possible defective delinquency.[8]

*Judgment affirmed.*

---

8. As to an examination conducted pursuant to 18 U.S.C.A. § 4244, "Mental incompetency after arrest and before trial", the statute provides that no statement made by the accused in the course of examination shall be admitted in evidence on the issue of guilt in any criminal proceeding. In *Albright* the court thought that even if the examination is required, not under the statute, but "under a court's inherent power to require an examination, the same recognition should be given to the privilege." 388 F. 2d at 725. In *Sas* the court observed in note 28, 295 F. Supp. at 413, that it had "reservations as to the wisdom, as distinquished from the legality, of examinations relating to circumstances of the crime for which the inmate was convicted, if there is pending a motion for a new trial, or if the conviction is on appeal." It pointed out, however, that "objection could be made to the use if a new trial were granted, of any material disclosed without an understanding and voluntary waiver."