JAMES R. MEYERS *v.* STATE OF MARYLAND

[No. 126, September Term, 1974.]

*Decided October 24, 1974.*

The cause was submitted on briefs to Morton, Gilbert and Moore, JJ.

Submitted by *C. Raymond Hartz* and *Arnold Zerwitz, Assistant Public Defenders,* for appellant.

Submitted by *Francis B. Burch, Attorney General, Donald R. Stutman, Assistant Attorney General, Warren B. Duckett, Jr., State's Attorney for Anne Arundel County,* and *Joseph J. Reina, Assistant State's Attorney for Anne Arundel County,* for appellee.

Gilbert, J., delivered the opinion of the Court.

James R. Meyers was convicted in the Circuit Court for Anne Arundel County of receiving stolen goods, and he was sentenced to imprisonment for a term of three years. He was referred to Patuxent Institution for evaluation. Meyers refused to submit to mental health examinations at Patuxent and was cited for contempt. *See McNeil v. Director, Patuxent Institution,* 407 U. S. 245, 92 S. Ct. 2083, 32 L.Ed.2d 719 (1972); *State v. Weeder,* 22 Md. App. 249, 322 A. 2d 253 (1974); *Marsh v. State,* 22 Md. App. 173, 322 A. 2d 247 (1974); *Savage v. State,* 19 Md. App. 1, 308 A. 2d 701 (1973).[1] When the case was called for trial before Judge Ridgely P. Melvin, the State withdrew its petition and requested the court to sign a new order in which Meyers was directed to submit to the following:

"(1) Weschler Adult Intelligence Scale; (2) The Bender-Gestalt Test; (3) Draw a Person Test; (4) The Rorschack Ink Blot Test; (5) A Social Service interview; (6) An electroencephalogram; (7) A

---

1. Certiorari was granted by the Court of Appeals of Maryland November 5, 1973, but the appeal was dismissed as moot December 14, 1973.

psychiatric interview; and that he shall cooperate with the staff in the examinations; . . ." [2]

The order also contained a proviso that:

" . . . [A]ny information elicited from [Meyers] during the course of his examination and evaluation at Patuxent Institution shall not be used, directly or indirectly, as a basis for subsequent criminal prosecution of [Meyers]." [3]

The order was signed by Judge Melvin on February 5, 1973 and served upon Meyers. Notwithstanding the court order, Meyers flatly refused to submit to the tests and interviews.

Because of Meyers's refusal to comply with the new order, the State once again initiated contempt proceedings against him. The matter came up for hearing before Judge Matthew S. Evans, at which time Meyers moved for a jury trial. Judge Evans, however, stated that, "The acts alleged are insufficient in the eyes of this court to merit punishment by a term of six months," if Meyers were found to be guilty of contempt; and the judge therefore held that no jury trial was warranted. The case was then tried before Judge Evans. Meyers was adjudicated to be in contempt and committed to the custody and jurisdiction of the Commissioner of Correction for a period of six (6) months less one day, and "this sentence is to run consecutively to any sentence or sentences [Meyers is now] serving, but [Meyers may] purge [himself] of this." The trial judge advised Meyers, in effect, that if he, Meyers, submitted to the tests and interviews at Patuxent, the court would strike the contempt sentence.

Meyers has appealed to this Court. He argues that the contempt conviction should be reversed because he was denied "his constitutional right to trial by jury." We do not, however, see it that way.

In *Savage v. State, supra,* we held that Savage's wilful failure to obey an order identical to that imposed in the

---

2. The order of February 5, 1973 is identical to the order of the Circuit Court for Caroline County in the case of Savage v. State, *supra.*
3. *Ibid.*

instant case constituted "constructive and civil" contempt "as distinguished from direct and criminal. *Roll v. State*, 15 Md. App. 31, 47-50 [288 A. 2d 605 (1972)], *affirmed in part and reversed in part, State v. Roll*, 267 Md. 714 [298 A. 2d 867 (1973)]." Thus we think Meyers's disobedience constituted "constructive civil contempt." Of course, in order for this Court to affirm a finding of contempt on the part of Meyers, it is required that the record demonstrate that Meyers's conduct in failing to yield to the trial court's order was "wilful" and not "a manifestation of mental illness, for which he cannot fairly be held responsible." *McNeil v. Director, Patuxent Institution, supra* at 251.

No contention is made by Meyers that his conduct should be excused on the basis of his inability to comply with the trial court's order because of "mental illness", nor would the record support such a contention. From a reading of the transcript, including Meyers's testimony, the course of action he pursued was wilful, deliberate and calculated to prevent an examination and recommendation by Patuxent. It is apparent from the record that Meyers's every act, while at Patuxent, was directed toward frustrating the purpose of Md. Ann. Code art. 31B.

The distinction between civil and criminal contempt is ofttimes hazy, but, nevertheless, real. In a civil contempt case the punishment is remedial and can be avoided by compliance with the court order. A civil contempt proceeding is "intended to coerce future compliance." Consequently, the penalty in a civil contempt case "must provide for purging". *State v. Roll, supra.* A criminal contempt, on the other hand, imposes a penalty for past misconduct. *State v. Roll, supra.* The burden of proof required in the two different contempt proceedings is not the same. To establish a criminal contempt, the contemner must be shown beyond a reasonable doubt to have committed a contempt of court, but in a civil contempt situation, the standard of proof employed is that of the preponderance of the evidence. *State v. Roll, supra.*

The Supreme Court has articulated the rule that in all criminal contempt proceedings where the contempt is

"serious", the alleged contemner is entitled, as a matter of constitutional right, to a trial by jury. *See Taylor v. Hayes,* 418 U. S. 488, 15 Cr. L. 3289 (1974); *Codispoti v. Pennsylvania,* 418 U. S. 506, 15 Cr. L. 3294 (1974); *Bloom v. Illinois,* 391 U. S. 194, 88 S. Ct. 1477, 20 L.Ed.2d 522 (1968). Where, however, the contempt is "petty", *i.e.,* the sentence that may be imposed is less than six (6) months imprisonment and/or less than $500.00 fine, trial by jury is not mandated by the Sixth Amendment.[4]

In the instant case, Judge Evans, at the very outset, announced that in his view Meyers's failure to obey the court order, if that were the fact, did not constitute a "serious" offense within the meaning of the Supreme Court holdings, and therefore, Meyers was not entitled to a jury trial. We know of no rule of law that requires a person charged with civil contempt to be afforded a trial by jury, at least if the offense is petty. Moreover, it would be inconsistent to require a jury trial in petty civil contempt offenses wherein the contemner may always purge himself of the contempt, and at the same time deny a jury trial in a petty criminal contempt case where the punishment is not purgeable.

A jury trial in this factual situation is not required by the United States Constitution, the Constitution of Maryland, the Maryland Code, or the decisional law as enunciated by the Supreme Court, the Court of Appeals of Maryland or this Court. We hold that Meyers was not entitled to a trial by jury.

*Judgment affirmed.*

---

**4.** The Supreme Court stated in Codispoti, *supra,* (decided June 26, 1974) that "decisions have established a fixed dividing line between petty and serious offenses: those crimes carrying more than six months sentence are serious crimes and those carrying less are petty crimes."