CALVIN HERD *v.* STATE OF MARYLAND

[No. 280, September Term, 1977.]

*Decided September 14, 1977.*

The cause was submitted on brief to GILBERT, C. J., and MOYLAN and MASON, JJ.

Submitted by *Alan H. Murrell, Public Defender,* and *Victoria A. Salner, Assistant Public Defender,* for appellant.

GILBERT, C. J., delivered the opinion of the Court.

In this, hopefully, the last appeal arising out of Patuxent Institution, we have been presented with a joint motion by the appellant, Calvin Herd, and the State, through the Attorney General, to reverse the judgment of the Circuit Court for Charles County. We shall comply with the joint interpellation and reverse the judgment.

Before recounting the facts from which this case arose, the Court acknowledges the spirit of fairness in which the Attorney General's office, in the person of Bruce C. Spizler, Esq., entered into the motion in the obvious interest of justice. Mr. Spizler is apparently cognizant of the old adage that the State wins when justice prevails.

We turn now to a brief discussion of the facts of this matter.

On March 23, 1976, appellant was convicted of manslaughter in the death of Albert D. Herd, Jr., and sentenced to ten years imprisonment. The appellant was ordered to be referred to Patuxent Institution for evaluation as a possible defective delinquent. Thereafter, a petition was filed against appellant on February 15, 1977, alleging that he was in contempt of court for his failure to cooperate with the Patuxent psychiatrists. At a subsequent hearing on the petition, the appellant was adjudged to be in contempt, and he was sentenced, therefor, to ten years imprisonment, the term to run consecutively to the manslaughter sentence.

There are at least two reasons why this judgment must be reversed, and we, thus, see no reason to discuss all the issues raised.

Appellant argues that the "offense, if any, is a civil contempt." We agree.

The Maryland courts have consistently held that failure to cooperate with Patuxent Institution doctors constitutes only a *civil* contempt. *Williams & Fulwood v. Director*, 276 Md. 272, 313, 347 A. 2d 179, 192 (1975); *Meyers v. State*, 23 Md. App. 275, 277-78, 326 A. 2d 773, 775 (1974). *See Savage v. State*, 19 Md. App. 1, 15, 308 A. 2d 701, 709 (1973).

In *Meyers*, we pointed out that:

> "The distinction between civil and criminal contempt is ofttimes hazy, but, nevertheless, real. In a civil contempt case the punishment is remedial and can be avoided by compliance with the court order. A civil contempt proceeding is 'intended to coerce future compliance.' Consequently, the penalty in a civil contempt case 'must provide for purging.' *State v. Roll* . . . [267 Md. 714, 298 A. 2d 867 (1973)]. A criminal contempt, on the other hand, imposes a penalty for past misconduct." 23 Md. App. at 278, 326 A. 2d at 775.

Because the punishment in a civil contempt is remedial in nature, contemners are said to "carry the keys of their prison in their own pockets." *In re Nevitt*, 117 F. 448, 461 (8th Cir. 1902). To turn the key and exit the prison the contemner has but to comply with the court order. Once he has done that, the contempt is purged. Obviously, the commitment for contempt must provide not only a penalty but the footpath for avoidance of the sanction.

The trial judge, in the case now before us, however, imposed a ten year sentence without pointing the way for the appellant to purge himself of the contempt. In so doing, he erred. The fact that the appellant was informed by the judge that if the appellant decided to "cooperate with the doctors at the [Patuxent] institution, then the [c]ourt will consider suspending the sentence," does not furnish the requisite opportunity for appellant to purge himself of the contempt. At best, if the court suspended the sentence, the appellant would still stand convicted of contempt. Moreover, the court's consideration of suspending the sentence does not of necessity mean that the court *would* suspend it. When the

Court of Appeals and this Court speak of a "provision for purging" or "opportunity for purging," we mean that the contemner must be afforded the chance to rid himself of guilt and thus clear himself of the charge. To suspend the sentence and allow the conviction to stand falls well short of the mark. The sanction used by the trial court in the instant case was not remedial but penal, and in a civil contempt such as this, was impermissible.

The second reason that dictates reversal in the matter now before us stems from the legislative amendments to what, prior to July 1, 1977, was known as Md. Ann. Code art. 31B, entitled, "Defective Delinquents." That title was changed as of July 1, 1977, to "Patuxent Institution." 1977 Md. Laws, ch. 678.

The prior law permitting trial judges by court order to refer a defendant to Patuxent upon request of "the Department of Correction or by the State's [A]ttorney or [A]ssistant State's [A]ttorney who prosecuted the person for a crime or offense specified . . . [in then Md. Ann. Code art. 31B, § 6 (a)] on any knowledge or suspicion of the presence of defective delinquency in such person," Md. Ann. Code art. 31B, § 6 (b) (1976), has been repealed. Current Md. Ann. Code art. 31B, § 8 now reads:

> "(A) Any person who is serving a sentence of imprisonment following conviction of a crime, has more than three years remaining to serve on his sentence, and has not been evaluated by or confined at the [Patuxent] institution within the preceding three years may be referred by the Commissioner [of Correction] to the [Patuxent] institution for evaluation as to whether he is an eligible person upon recommendation of the sentencing court, upon application to the Commissioner by the State's Attorney of the county in which the person was last convicted, upon application by the inmate, or upon recommendation of his [the Commissioner's] staff."

Notwithstanding the referral to Patuxent by the Commissioner, the inmate may request, in writing, a

transfer from Patuxent. The Commissioner, within the time specified after notice of such a request from the Director of Patuxent, shall cause the inmate to be delivered to the correctional facility designated by the Commissioner. Md. Ann. Code art. 31B, § 11 (B) (1). No longer is confinement in Patuxent involuntary, *Id.*, nor indeterminate. Md. Ann. Code art. 31B, § 11 (A).

By virtue of § 16 of the new Article 31B, any person transferred or committed to Patuxent is to "be evaluated and dealt with in accordance with the provisions of the article." It is at once apparent that because of the enactment of the current statute the entire contempt proceeding in the instant case became an exercise in futility. As we read the new statute, there is no necessity to apply for contempt proceedings. Whether the inmate is "an eligible person" for confinement is immaterial if he does not wish to be confined in Patuxent. Inasmuch as the appellant is under no legal obligation to "cooperate" with the "doctors," he cannot be compelled to obey the court directive to do so.

*Judgment reversed.*
*Mandate to issue forthwith.*
*Costs to be paid by Charles County.*