BEVERLY P. ANTONELLI *v.* JOHN O. ANTONELLI

[No. 334, September Term, 1979.]

*Decided December 10, 1979.*

The cause was argued before THOMPSON, COUCH and WEANT, JJ.

*John T. Bell* and *Robert W. Thompson,* with whom were *Bell, Cornelius & Shore* on the brief, for appellant.

*Herbert P. Suskind* for appellee.

WEANT, J., delivered the opinion of the Court.

The basis for this argle-bargle was laid with the filing of

a decree of divorce *a vinculo matrimonii* on July 26, 1977, in the Circuit Court for Montgomery County, Equity No. 56325 (Antonelli v. Antonelli), which provided, among other things, "that the custody of the two minor children of the parties, Dominic Frank Antonelli, III, born September 26, 1964 and John Patrick Antonelli, born April 11, 1966, shall be awarded to the plaintiff [Beverly P. Antonelli] with reasonable rights of visitation reserved to the defendant [John O. Antonelli], pending further order of the Court." Thereafter, the defendant sought to have that decree modified through a change of custody of the two minor children; following this, he filed a petition for contempt on January 4, 1979, for the alleged failure of the plaintiff to grant him reasonable visitation with said children. This latter action resulted in the issuance on January 4, 1979, of a rule to show cause requiring the plaintiff to appear in court to show cause "[w]hy the Plaintiff [appellant herein] should not be found in contempt of the Order of Court dated July 25, 1977 for failing to allow reasonable rights of visitation to the Defendant [appellee herein]." A hearing was held and the plaintiff, by Order dated February 13, 1979, was "found to be in constructive civil contempt" of the Circuit Court for Montgomery County "for her willful failure to afford reasonable visitation to the Defendant, as required by the previous order of this Court;" it was further ordered

> that the imposition of any sanction for this contempt is hereby suspended upon the condition that the Plaintiff afford reasonable rights of visitation to the Defendant at all times in the future, to specifically include the following rights of visitation until further order of this Court:
>
> > From 6:00 p.m. February 23, 1979 until 8:00 p.m. February 25, 1979, and
> >
> > From 10:00 a.m. Saturday until 8:00 p.m. Sunday on the weekends beginning March 10, 1979 and March 31, 1979, and every second weekend thereafter . . ..

This same order provided that the Master should consider the

question of definite specific rights of visitation in light of the difficulties which the parties had experienced in respect to visitation.

Beverly P. Antonelli appealed this finding to this Court, alleging that the Order of the Montgomery County Court of February 13, 1979, was improper in that it failed to contain a provision by which she could purge herself; she further presented the following questions:

1. Is the July 25, 1977 decree, requiring only "reasonable rights of visitation" too uncertain, unspecific or indefinite to provide a basis for holding the Appellant in contempt?

2. Has the Appellant denied visitation within the terms of the July 25, 1977 decree?

3. Should the Appellant be cited for contempt of the July 25, 1977 decree?

4. Has the Appellee met his burden of proof?

5. Did the hearing judge exceed his powers by conditioning the imposition of contempt sanctions on the Appellant's noncompliance with a new set of visitation requirements conceived in the Hearing to Show Cause?

Considering first the alleged failure of the trial court to provide a "purge" provision, we quote the pertinent part of the court's Order of February 13, 1979, which reads: "the imposition of any sanction for this contempt is hereby suspended upon the condition that the Plaintiff afford reasonable visitation rights to the Defendant...." In a civil contempt such as this, the contemnor must be afforded a chance to purge herself of her guilt, this type of punishment being remedial and, abrogable by compliance. In the instant case the court provided for the suspension of the "sanction" but left standing the finding of "constructive civil contempt." In effect, this puts the plaintiff on probation without allowing for any means by which she can rid herself of the guilt. The contempt citation must therefore be reversed. *State v. Roll and Scholl,* 267 Md. 714, 728, 298 A.2d 867, 876 (1973); *Herd v. State,* 37 Md. App. 362, 377 A.2d 574 (1977).

Since our conclusion above mandates reversal, it is not necessary for us to further consider the questions presented by Mrs. Antonelli. Nonetheless, we feel compelled to address her contention that the requirement of "reasonable rights of visitation" is too vague and uncertain to provide a basis for a contempt finding. We have been cited to no cases directly on point nor have we found any. Mrs. Antonelli argues that for a decree to be a basis for a contempt finding it must be "definite, certain and specific in its terms" and "sufficiently specific to give a defendant a fair guide as to what is expected of him." This argument certainly follows the dictates of our courts. *Harford County Education Ass'n v. Board of Education,* 281 Md. 574, 587, 380 A.2d 1041, 1049 (1977); *Mattingly v. Houston,* 252 Md. 590, 593, 250 A.2d 633, 635 (1969).

While the granting of visitation rights under a dictate that they be "reasonable" may not be as preferable as more specific directions as to date and time, we cannot hold that such a decree is so indefinite, uncertain, and unspecific as to be beyond the court's contempt proceedings. It is a term that is consistently used by the courts of this State and, in fact, is a term that was used in the separation agreement entered into between the parties to this case; said agreement was executed on May 18, 1976, and filed herein as plaintiff's exhibit number 3. Black's Law Dictionary 1138 (5th ed. 1979) defines "reasonable" as follows:

> Fair, proper, just, moderate, suitable under the circumstances. Fit and appropriate to the end in view. Having the faculty of reason; rational; governed by reason; under the influence of reason; agreeable to reason. Thinking, speaking, or acting according to the dictates of reason. Not immoderate or excessive, being synonymous with rational, honest, equitable, fair, suitable, moderate, tolerable. [Citation omitted].

Whether or not the visitation afforded is reasonable depends upon the circumstances involved. We are not prepared to say that this is a situation in which a court cannot exercise its

discretion. Obviously, no visitation at all would not be reasonable under ordinary circumstances. The reasonableness must be predicated on the particular conditions involved in each case, *e.g.,* age of child, location, dates and times available.

In this case the difficulty with visitation apparently started after a change of custody was sought by Mr. Antonelli, which motion was mailed to Mrs. Antonelli's attorney on December 12, 1978. Prior to that time, Mr. Antonelli had enjoyed visitation rights every other weekend and sometimes on Thursday evenings. Thereafter, things did not go as smoothly. The court below found that Mrs. Antonelli unreasonably deprived Mr. Antonelli of visitation rights and that this deprivation "was not within the fair range of her exercise as to discretion as a custodial parent and was, indeed, motivated by either spite or if not in retaliation for his filing of a custody change, at least to obtain a strategic advantage through depriving him of fair access and visitation with the children during the pendency of this." The court found that, while Mrs. Antonelli denied Mr. Antonelli the right to take the children skiing on the pretext that their grades were not good, she, in turn, took them on a ski trip herself. During this time also there was the problem of Mr. Antonelli being able to see the children on Christmas of 1978. While Mrs. Antonelli indicates that Mr. Antonelli was allowed to visit on that date, Mr. Antonelli testified, and apparently the court believed, that he was invited to spend Christmas at Mrs. Antonelli's house with her boyfriend, his children and their children. These findings do not appear to be motivated by the "best interest of the children." Under this situation it does not seem reasonable or logical to say that the result reached by the Chancellor was clearly erroneous and unsupported by the record.[1]

The other matter which appears to have rankled Mrs. Antonelli most severely is that, according to her, the hearing judge exceeded his powers by conditioning the suspension of contempt sanctions upon her compliance with a new set of

---

1. We think this to be dispositive of questions 2 and 3.

visitation requirements. We think that the short answer to this is found in the court's statement that

> "[w]ell, what I'm trying to say to you is that I do not think that under these pleadings — well, at least there may be a problem with my proceeding to pass an order which defines on an interim basis at least what reasonable rights of visitation shall constitute unless it is coupled with what I clearly can make under the circumstances, and that is a finding of contempt. These are people who don't impress me as needing a record of contempt—.[2]

Clearly the court was merely attempting to define what it considered to be "reasonable rights of visitation." It found no reason why it could not define this term, as long as it also found contempt, which it in fact did under the circumstances presented. It would appear that the schedule set forth in the court's Order of February 13, 1979 was similar to the schedule followed by the parties prior to Mrs. Antonelli's change of heart in December. We also gather that this was to have been a method by which the plaintiff could purge herself, although not specifically provided for in the court's order. We cannot find that it was the intention of the court to set up "a new set of visitation requirements." Hence, we do not believe that the court exceeded its powers in this regard.

For the reasons stated above, we reverse the order of the Circuit Court for Montgomery County and remand the case now before us for further proceedings in conformity with this opinion.

*Reversed and remanded.*
*Costs to abide results.*

---

2. We do not think that this latter statement reflects at all on the court's certainty of the contempt proof. It appears to reflect only on the status of the parties. Hence, we find no merit in question 4.