RUSSELL EUGENE PYLES *v.* STATE
OF MARYLAND

[No. 609, September Term, 1974.]

*Decided March 17, 1975.*

264

The cause was argued before THOMPSON, DAVIDSON and MOORE, JJ.

*Charles Duvall Smith,* with whom were *Taylor & Smith* on the brief, for appellant.

*Donald R. Stutman, Assistant Attorney General,* with whom were *Francis B. Burch, Attorney General, Arthur A. Marshall, Jr., State's Attorney for Prince George's County* and *Charles P. Strong, Jr., Assistant State's Attorney for Prince George's County* on the brief, for appellee.

THOMPSON, J., delivered the opinion of the Court.

Russell Eugene Pyles appeals from an order of the Circuit Court for Prince George's County, Chief Judge Ralph W. Powers presiding, finding him in contempt for his failure to comply with a court order directing that he undergo an examination at Patuxent Institution.

The record shows that on September 2, 1970, appellant received a ten year sentence for manslaughter to begin as of July 14, 1970. On September 3, 1970, the trial judge directed that he be referred to Patuxent Institution for examination to determine his status as a defective delinquent. When it was discovered that the order did not contain a requirement that Pyles cooperate, a second order was signed on April 9, 1974 directing that he be examined at Patuxent and that he submit to any mental, medical or physical tests required by the staff of Patuxent Institution for said purposes. A copy of this order was served upon Pyles on April 18, 1974. There-

after on the 24th of May the trial court signed an order directing that Pyles show cause at a hearing to be held on July 11, 1974, why he should not be held in contempt for violation of the April 9 order. At the hearing, Dr. H. M. Boslow testified that Pyles had submitted to a physical examination but had refused to submit to psychiatric or psychological examinations. Dr. Boslow added that he and the staff had been unable to determine appellant's status because of said refusals. Particular problems were encountered with reference to appellant's intellectual deficiency and emotional unbalance because of the absence of past examinations. Defense counsel stated that the appellant had requested that he advise the court that he had no intentions of submitting to any psychological testing at Patuxent Institution. The trial judge found Pyles in contempt and directed that he:

". . . be detained by the Division of Correction under this order and not under any other commitment, until such time as he is willing to comply with the Order of this Court dated April 9, 1974, to submit to the examinations enumerated therein; and

"IT IS FURTHER ORDERED, that when defendant agrees in writing to comply with the Order of this Court dated April 9, 1974 the Commissioner of Corrections, shall forthwith transfer defendant to Patuxent Institution."

## I WILLFULNESS OF THE CONTEMPT

Appellant first contends that since the two elements that could not be ascertained by Dr. Boslow were his intellectual deficiency and emotional unbalance, his refusal to cooperate could be the result of these factors rather than a contemptuous refusal. The appellant cites no authority to support his argument. Presumably he relies on some of the language of *McNeil v. Director*, 407 U. S. 245, 92 S. Ct. 2083, 32 L.Ed.2d 719 (1972), particularly:

"For if confinement is to rest on a theory of civil

> contempt, then due process requires a hearing to determine whether petitioner has in fact behaved in a manner that amounts to contempt. At such a hearing it could be ascertained whether petitioner's conduct is willful, or whether it is a manifestation of mental illness, for which he cannot fairly be held responsible. *Robinson v. California,* 370 U. S. 660, 82 S. Ct. 1417, 8 L.Ed.2d 758 (1962)." *Id.* at 251.

We do not interpret this language as laying down a rule of law that the record must affirmatively show that the appellant's conduct was not the product of mental or emotional instability, but rather as indicating a possible defense to a charge of contempt. Courts have from time immemorial held that every person was presumed sane in the absence of contrary evidence. *Leland v. Oregon,* 343 U. S. 790, 72 S. Ct. 1002, 96 L. Ed. 1302 (1952). We have followed the universal rule, *Tanner v. State,* 9 Md. App. 462, 467-468, 265 A. 2d 573 (1970), *cert. denied,* 259 Md. 736, and see no reason to depart therefrom. *See Meyers v. State,* 23 Md. App. 275, 326 A. 2d 773 (1974). There is nothing in this record which would tend to show the appellant's contemptuous conduct was the product of intellectual deficiency or emotional unbalance. It appears rather to be a studied intention to avoid a possible application of Md. Code, Art. 31B.

## II SELF-INCRIMINATION

Appellant argues that the trial judge's order directing him to cooperate was invalid under *Savage v. State,* 19 Md. App. 1, 308 A. 2d 701 (1973) and *Meyers v. State, supra.* The orders in those cases specifically provided that information elicited could not be used in any criminal case or prosecution against the accused. We do not think the omission of such a caveat is fatal.

When a witness is called to testify in any proceeding he is permitted to claim his privilege against self-incrimination and to refuse to answer any appropriate question. That does not mean, however, that he can avoid testifying as to any

facts which might not incriminate him. *Shifflett v. State*, 245 Md. 169, 173, 225 A. 2d 440 (1967); *Royal v. State*, 236 Md. 443, 447-448, 204 A. 2d 500 (1964); 8 *Wigmore on Evidence* § 2268 (McNaughton Rev. 1961). In the instant case we are unable to see how an I.Q. examination, for example, could in anywise incriminate Pyles or anyone else. It is possible that in securing the psychiatric history appellant might be asked about some crime, not barred by the statute of limitations, and of which he was not previously convicted, but he cannot be permitted to claim his privilege against self-incrimination and thus avoid giving *any* history of his prior life. In an appropriate case we may well sustain his right to refuse to answer a specific question. Of course, an accused in a criminal case can refuse to testify, Maryland Declaration of Rights, Article 22; *Marshall v. State*, 182 Md. 379, 35 A. 2d 115 (1943), but in the instant situation Pyles is more akin to a witness than an accused.

As we indicated in *Savage v. State, supra*, we agree with *United States v. Albright*, 388 F. 2d 719, 723 (4th Cir. 1968) that "a defendant's right not to incriminate himself is not violated *per se* by requiring him in an appropriate case to submit to a mental examination." We do not think that the difference between an insanity examination and an examination to determine defective delinquency is significant. In both instances the court is trying to protect society and an individual who may be suffering from a mental illness of some type. We reiterate what we said in *Savage v. State, supra:*

> "It follows, said the United States District Court for the District of Maryland in *Sas v. Maryland*, 295 F. Supp. 389, 411 (1969), *affirmed, sub nom., Tippett v. Maryland*, 436 F.2d 1153, (1971), *cert. dismissed sub nom., Murel, et al. v. Baltimore City Criminal Court, et al.*, 407 U.S. 355 (1972), that '[i]f a *compulsory* examination under Albright is not a violation of the right against self-incrimination, certainly examination at Patuxent would not be.' It quoted extensively from *Albright* and concluded,

295 F. Supp. at 413: 'This Court accordingly holds that the examination procedures at Patuxent did not violate any right against self-incrimination. This Court entertains no doubt as to this conclusion; but were there any question it would not make the Maryland Act unconstitutional. An objection, if valid, could be made at the time of any later attempt to use such information in any proceeding to convict for crime.' We are in full accord." *Id.* at 18-19.

## III JURY TRIAL

Pyles next contends he was denied a jury trial. The record does not reveal that the appellant requested a jury trial, thus the issue is not before us. Md. Rule 1085. *See,* however, *Savage v. State, supra* and *Meyers v. State, supra.*

## IV ILLEGALITY OF ORDER OF APRIL 9, 1974

Pyles, citing Md. Rule 764 and the doctrine of *res judicata,* contends that the court was without legal power to pass the order on April 9, 1974 because the prior order, which it modified, was not obtained by fraud, mistake or irregularity. We do not regard the order as invalid under either contention. Appellant cites no case to support his position and we know of none. The order of April 9, 1974 supplemented that which was passed September 3, 1970, directing the appellant to cooperate with the proper authorities in permitting them to make appropriate examinations. The order of September 3, 1970 was an interlocutory order which is subject to change by the court at any time prior to the entry of a final judgment. *Hopkins v. Easton National Bank,* 171 Md. 130, 135, 187 A. 874 (1936).

## V ALLEGED MODIFICATION OF SENTENCE

Finally appellant contends that the order finding him in contempt was invalid because it tolled his sentence. He contends that the tolling was a modification of his sentence in violation of Md. Rule 764 which precludes a modification

of a final judgment except for fraud, mistake or irregularity. We do not regard the order as having such effect; it directed that the defendant "be detained by the Division of Correction under this order and not under any other commitment, until such time as he is willing to comply with the Order of this Court dated April 9, 1974, to submit to the examinations enumerated therein." The order will preclude parole under the original sentence but does not in any way modify that sentence.

Appellant also alleges that the order violates his right to due process under *McNeil v. Director, supra.* The holding of that case was that a convicted person could not be held at Patuxent after the expiration of his original sentence if there were no further proceedings. It will be a long time before the appellant's sentence expires and the principle of *McNeil* comes into play; there is no need for us at this time to pass upon what further proceedings, if any, may be required to continue Pyles' incarceration after July 14, 1980 when his current sentence expires.

We point out, as did the trial judge, that Pyles can be released from the contempt order at any time he desires by the simple procedure of taking the required examinations; and that it is entirely possible that the medical procedures at Patuxent could result in a much earlier release from incarceration than he could obtain in any other manner.

*Order of April 9, 1974 affirmed.*