## In the Matter of the Mental Commitment of Larry UTLEY, Appellant (Respondent Below).

### No. 49A04–9004–CV–173.

Court of Appeals of Indiana, Fourth District.

Jan. 31, 1991.

---

Kenneth J. Falk, Lisa R. Hayes, Legal Services Organization of Indiana, Inc., Indianapolis, for appellant.

William E. Daily, Deputy Atty. Gen., J. Michael Grubbs, Locke, Reynolds, Boyd & Weisell, Indianapolis, for appellees.

CONOVER, Judge.

Respondent–Appellant Larry Utley (Utley) appeals a contempt conviction arising from a hearing before the Marion County Municipal Court.

We affirm.

Utley raises the following consolidated issue:

> whether the trial court erred in finding him in contempt for refusal to comply with the court's order.

Utley is a forty-three year old Indianapolis resident with a history of hospitalization and outpatient treatment for chronic mental illness dating back to 1976. In 1987, he was committed to Midtown Community Mental Health Center (Midtown) as an outpatient after the court found he was suffering from Chronic Paranoid Schizophrenia as well as the effects of alcohol and drug abuse. The court imposed special conditions of outpatient commitment, including the requirement that Utley take all medication as prescribed, and that he attend all Midtown clinic sessions as scheduled.

In October of 1988, Midtown filed a required periodic report detailing Utley's progress in treatment. After reviewing the report, the court extended Utley's commitment. The court also ordered Midtown to file its next report by October 15, 1989.

On October 2, 1989, Midtown filed the required report. Other reports followed which indicated Utley was not in compliance with court ordered conditions for continuance of outpatient status. The trial court scheduled a compliance hearing in November, but when Utley did not appear at the hearing, the court reset the hearing for December, 1989. On November 28, 1989, the court continued Utley's commitment until October 15, 1990.

On December 28, 1989, Utley appeared in court for the scheduled compliance hearing. He was not represented by counsel and the court did not advise him of his right to counsel, question him concerning his ability to pay for an attorney, or appoint pauper counsel for him.[1] During the hearing, Utley told the judge he believed his commitment had been dismissed. The judge attempted to explain the commitment was still in effect, but Utley interrupted the judge's explanation. The judge then questioned whether Utley had been taking his medication. Utley again interrupted, and the judge ordered him to go to Midtown for evaluation. Utley continued to question the validity of his commitment, and the judge interpreted his statement as a refusal to submit to evaluation. The judge held him in contempt, and ordered him to be incarcerated until he agreed to be evaluated.

On January 4, 1990, Utley was returned from the jail to the court. He still insisted he was not on commitment, and refused to submit to medication. He was returned to jail without bond. However, later the same day he was admitted to the psychiatric ward of Wishard Memorial Hospital.

On January 18, 1990, Utley appeared before the court with a public defender. He indicated he understood his commitment and promised to take the prescribed medication and attend counseling sessions. He was released and resumed outpatient status.

■ Before deciding the issue of whether Utley's contempt conviction was proper we must address the assertion made by Midtown and the State that the issue is moot. Midtown and the State cite *Wools v. Reberger* (1935), 209 Ind. 99, 198 N.E. 65, in support of their contention. In *Wools*, our supreme court established a general rule when it held an appeal of a civil contempt conviction is moot where the appellant has already complied with the court's order and has been discharged from custody. They also cite *N.J.R. v. State* (1982), Ind.App., 439 N.E.2d 725, 727, for the proposition the trial court must be affirmed because there is no "effective or practical means of remedying the violation of rights at this point in time."

■ An issue is deemed moot when it is no longer "live" or when the parties lack a legally cognizable interest in the outcome of its resolution. *Bartholomew County Hospital v. Ryan* (1982), Ind.App., 440 N.E.2d 754, 757. Accordingly, where the

---

1. The court later determined Utley was indeed indigent and appointed counsel to perfect this appeal. (R. 61, 64).

principal questions at issue cease to be of real controversy between the parties, the "errors assigned become moot questions and this court will not retain jurisdiction to decide them." *Id.* Thus, when we are unable to provide effective relief upon an issue, the issue is deemed moot, and we will not reverse the trial court's determination "where absolutely no change in the status quo will result." *Id.*

However, there is an exception to the general rule. A public interest exception may be invoked upon the confluence of three elements: 1) the issue involves a question of great public importance; 2) the factual situation precipitating the issue is likely to recur; and 3) the issue arises in a context which will continue to evade review. *In re Marriage of Stariha* (1987), Ind.App., 509 N.E.2d 1117, 1123 (citing *Bartholomew, supra,* at 759).

The question of how persons subject to involuntary commitment are treated by our trial courts is one of great importance to society. Indiana statutory and case law affirms the value and dignity of the individual facing commitment or treatment is of great societal concern. *See* IND.CODE 16-14-1.6-7; *In re Mental Commitment of M.P.* (1987), Ind., 510 N.E.2d 645, 646. Here, Utley was incarcerated and released long before his case could be reviewed by this court, and the possibility of review ever occurring prior to the expiration of his incarceration for possible and probable future contempts is practically nonexistent. The problem will continue because of the trial court's necessary practice of finding involuntarily committed individuals in contempt for failure to follow court orders. Furthermore, the fact Utley was not represented by counsel makes resolution of the general issue imperative. The issue raised by Utley fits within the public interest exception. We examine the issue even though no practical remedy is available.[2]

Utley contends the trial court committed error when it did not inquire whether he could afford counsel, or appoint counsel for him. We agree.

Representation by counsel is essential to protect the fundamental rights of life and liberty of an accused in a criminal prosecution, and counsel must therefore be appointed if the defendant is indigent. *Stariha, supra,* at 1119. Deprivation of liberty is never trivial, and it is the result, not the nature of the particular offense, that requires appointment of counsel. *Id.* "Thus, it is a defendant's interest in personal freedom, and not simply the special Sixth and Fourteenth Amendments right to counsel in criminal cases which triggers the right to appointed counsel." *Id.* Accordingly, counsel has been required in proceedings, including mental commitment proceedings, normally considered to be civil in nature. *Id.,* at 1119–1120 (citing *F.J. v. State* (1980), Ind.App., 411 N.E.2d 372, 377).[3] In essence, commitment proceedings are state actions wherein the State may deprive the individual subject to involuntary commitment of his liberty.

Even though the hearing in this case was a compliance hearing and not an original commitment action, the possibility of loss of liberty in the form of inpatient commitment was a likely result. The possibility of loss of liberty in the form of incarceration was also very real in view of the trial court's practice of ordering involuntarily committed individuals to comply with conditions of commitment or suffer contempt citations and attendant coercive incarceration.

Utley appeared at the hearing without benefit of counsel, was adjudged mentally ill, was ordered to submit to evaluation, and was ordered to spend time in jail, all without an advisement of his right to court appointed counsel. The trial court had the

---

**2.** In *N.J.R., supra,* we examined the issue involved even though we did not have any effective means of remedying the violation of N.J. R.'s rights.

**3.** Our prior determination regarding the necessity of providing counsel in commitment proceedings has been codified by the legislature. In 1987, the legislature added subsection (g) to IC 16-14-9.1-9, which states "[a] petitioner may be represented by counsel. The court may appoint counsel for the petitioner upon a showing of the petitioner's indigency."

duty to explain to Utley his right to counsel, determine whether Utley was indigent, and upon determination of indigency, provide him with adequate court appointed counsel. *See Smith v. Lane* (7th Cir.1970), 426 F.2d 767, 768–69, *cert. denied* 400 U.S. 874, 91 S.Ct. 103, 27 L.Ed.2d 109; *Blinn v. State* (1982), Ind.App., 441 N.E.2d 49, 50.[4]

The court's finding of contempt was not based on a disturbance of the court's proceedings but upon Utley's failure to understand and comply with the court's direction. His need of counsel was apparent, and the court erred in not appointing counsel.

■ Utley also contends the trial court erred in holding him in contempt because it did not determine whether his conduct was willful or a manifestation of his mental illness. He cites *McNeil v. Director, Patuxent Institution* (1972), 407 U.S. 245, 92 S.Ct. 2083, 32 L.Ed.2d 719, and *State ex rel. Kiritsis v. Marion Probate Court* (1978), 269 Ind. 550, 381 N.E.2d 1245, in support of his contention. In *McNeil*, the Supreme Court stated: ,

> For if confinement is to rest on a theory of civil contempt, then due process requires a hearing to determine whether petitioner has in fact behaved in a manner that amounts to contempt. At such a hearing it could be ascertained whether petitioner's conduct is willful or whether it is a manifestation of mental illness, for which he cannot fairly be held responsible. Civil contempt is coercive in nature, and consequently there is no justification for confining on a civil contempt theory a person who lacks the present ability to comply. 407 U.S. at 250–51, 92 S.Ct. at 2087–88. (internal citations omitted).

In *Kiritsis*, our Supreme Court held the appellant's failure to comply with a court order subjected him to the contempt power of the trial court. The court went on to hold due process was served when the trial court conducted a hearing on the contempt charge to determine whether the defendant's conduct was willful and not a man-

ifestation of mental illness for which he was not responsible. *Kiritsis*, 381 N.E.2d, at 1248.

Midtown and the State contend a finding of willfulness is not required unless the contemnor raises the defense that his failure to comply with the court's order was a manifestation of his illness. They cite *Pyles v. State* (1975), 25 Md.App. 263, 334 A.2d 160, 163, wherein the Maryland court held:

> We do not interpret this language [from *McNeil* ] as laying down a rule of law that the record must affirmatively show that the appellant's conduct was not the product of mental or emotional instability, but rather as indicating a possible defense to a charge of contempt.

The case cited by Midtown and the State is inapplicable here. In *Pyles*, the court emphasized there is a presumption that all persons are sane in the absence of contrary evidence. Since there was no evidence in the record to indicate Pyles's refusal to comply with the court's order was a result of any mental deficiency, the court refused to hold the trial court erred in not making a finding regarding the willfulness of his actions. 334 A.2d, at 163. In the present case, however, there is no question the trial court considered Utley to be mentally ill, as the court had already continued his commitment. Thus, the presumption discussed in *Pyles* was not valid. Although it is possible for a person on commitment to understand the implications of his refusal and to be held responsible therefore, such an understanding should not be presumed. The trial court should have made the appropriate determination required under *Kiritsis*.

Assuming *arguendo* Utley was required to raise his inability to comply as a defense, the error of the trial court's failure to appoint counsel is evident. A mentally ill person who cannot, because of his illness, appreciate the nature of his refusal to follow a court order, cannot be deemed, absent the benefit of counsel, to appreciate

---

**4.** *See also Stariha, supra,* at 1120–1121, for a discussion of indigency and representation

upon a finding of contempt.

the consequences of a failure to raise his illness as a defense.

Although the trial court committed error in finding Utley in contempt for his refusal to comply with the court's order, we do not have any effective or practical means of remedying the violation of his rights at this time. Since Utley has already complied with the court's order, and does not attack the underlying commitment order, we must affirm the court's judgment. *See Wools, supra; N.J.R., supra.*

Affirmed.

CHEZEM, J., concurs in result.

HOFFMAN, P.J., concurs in result.