### In re BUCK CREEK COAL, INC., Appellant–Petitioner.

### No. 77A01–9311–CV–365.

Court of Appeals of Indiana, First District.

Aug. 30, 1994.

Rehearing Denied Nov. 29, 1994.

---

Patrick A. Shoulders, Ziemer, Stayman, Weitzel & Shoulders, Evansville, for appellant.

Pamela Carter, Atty. Gen., Beth H. Henkel, Deputy Atty. Gen., Indianapolis, for appellee.

BAKER, Judge.

Today we review the limits on a trial court's authority to seek state police assistance during labor strikes. Appellant-petitioner Buck Creek Coal appeals the trial court's dismissal of its request to augment local law enforcement with state police pursuant to IND.CODE § 10–1–1–10.

## FACTS

Buck Creek operates an underground coal mine in Sullivan County, Indiana. Since April 1, 1993, Buck Creek and its union-represented employees have been involved in a labor dispute. As a result of this labor dispute, many of Buck Creek's employees went on strike. During this strike, incidents in and around the Buck Creek area, including tire slashing and vandalism, increased and Buck Creek became concerned that these incidents would escalate. Also, Sullivan County Sheriff John Waterman reported that the resources of his office were strained due to a shortage of police officers.

On April 29, 1993, Sheriff Waterman sent a letter to Judge P.J. Pierson, of the Sullivan Circuit Court, officially requesting assistance to help maintain the peace and the legal rights of those involved in the strike at the Buck Creek Mine. On June 1, 1993, Kevin Roots, Buck Creek's attorney, sent a letter to Judge Pierson requesting that the court seek Governor Bayh's approval for assistance from the Indiana State Police pursuant to I.C. § 10–1–1–10. A copy of this letter was forwarded to Governor Bayh. In addition, on July 14, 1993, H. Michael McDowell, Vice President of Human Resources at Buck Creek Coal, sent a letter to Sheriff Waterman, requesting immediate and full state police protection. A copy of this letter was also forwarded to Governor Bayh. On July 16, 1993, Sheriff Waterman again sent a letter to Judge Pierson requesting the assistance of the Indiana State Police.

On August 4, 1993, Buck Creek filed a document with the Sullivan Circuit Court, entitled "Request for Court Assistance Pursuant to Ind.Code § 10–1–1–10." The court heard evidence on the request on August 24, 1993. In its August 27, 1993, order the court held Buck Creek's Request For Assistance Pursuant to I.C. § 10–1–1–10 to be moot.

### DISCUSSION AND DECISION

■ Buck Creek claims that the trial court erred in dismissing its request for state police assistance. Buck Creek essentially disagrees with the trial court's reading of I.C. § 10–1–1–10. When construing a statute, our foremost duty is to determine and give effect to the true intent of the legisla-

ture. *Indiana Dep't of Human Services v. Firth* (1992), Ind.App., 590 N.E.2d 154, 157, *trans. denied.* When a statute is clear and unambiguous on its face, we may not interpret the statute. *Scheub v. Town of Schererville* (1993), Ind.App., 617 N.E.2d 585, 587.

Indiana Code § 10–1–1–10 in pertinent part provides:

[The police] may not exercise their powers within the limits of any city in labor disputes, nor may they suppress rioting and disorder except by direction of the governor or upon the request of the mayor of any such city with the approval of the governor, or if the governor is not available, with the approval of the lieutenant governor. And without the limits of any city they may not exercise their power in labor disputes except by direction of the governor, or the request of the judge of the circuit court of the county with the approval of the governor, or if the governor is not available, with the approval of the lieutenant governor.

■■ The intention of the Indiana General Assembly in enacting this law was to ensure that the Indiana State Police would not be used as "strike-breakers" in the 19th century sense.[1] 1970 Opinions of the Attorney General No. 44. Our Supreme Court has stated that it is in the province of the legislature to decide when the exigency exists for the exercise of the police power. *Peachey v. Boswell* (1960), 240 Ind. 604, 167 N.E.2d 48, 52. The police power of the state should not be used for the benefit of a relatively small group in the guise of action for the public welfare. *State Board of Barber Examiners*

1. The early twentieth century witnessed a dramatic increase in union membership, greater use of the strike, and a post-war proliferation of work-assignment disputes between unions, secondary boycotts and mass picketing. Robert A. Gorman, *Labor Law Unionization and Collective Bargaining* 5 (1976). Also, during that same period, state coercion and violence against strikers was substantially greater in the United States than in other industrial nations. William E. Forbath, *The Shaping of the American Labor Movement*, 102 Harv.L.Rev 1109, 1185 (1989). The passage of the National Labor Relations Act (NLRA) in 1935 manifested the federal government's concern for labor peace and the reduction of industrial strife. Donald R. Gitto, *Strike Violence: The NLRB's Reluctance To Wield Its Broad*

*Remedial Power*, 50 Fordham.L.Review 1371–1372 (1981–82). The original Act, popularly known as the Wagner Act, placed restrictions on employers' efforts to resist union attempts to organize employees; unions were, however, as yet unrestricted in their exertion of pressure in organizational campaigns. *Id.* at 1372. The balance of power in the labor management structure was altered by the 1947 Taft–Hartley Act which amended the NLRA by imposing restrictions upon unions. *Id.* These included a prohibition against the use of violence by unions to coerce or interfere with the rights of employees. *Id.* During this same period, in 1945, Indiana enacted I.C. § 10–1–1–10 in an effort to ensure that the Indiana state police would not be used by the unions as "strike breakers."

*v. Cloud* (1942), 220 Ind. 552, 44 N.E.2d 972, 979.

Buck Creek argues that I.C. § 10–1–1–10 "empowers both the Governor and/or Sullivan Circuit Court with the authority to determine whether State Police involvement is warranted." Appellant's Brief at 10. Buck Creek is mistaken. The statute on its face states that a court may request such assistance only with the approval of the Governor. The trial court determined that Buck Creek's request for assistance had been forwarded to Governor Bayh. As of the date of the court's order, the Governor had not approved Buck Creek's request. Therefore, the court determined that without the Governor's approval, any action taken on its part would be futile, and therefore, the request was moot. We agree. A case is moot when no effective relief can be rendered to the parties before the court. *In re Utley* (1991), Ind.App., 565 N.E.2d 1152, 1155. We will not reverse the trial court's determination of mootness where absolutely no change in the status quo will result. *Id.* We affirm the trial court's holding that without the Governor's approval, no effective relief could be provided to the parties, and therefore, the case was moot.[2]

Judgment affirmed.

ROBERTSON, J., concurs.

KIRSCH, J., concurs in result.

---

2. The appellant argues that even though a case may be moot, the court should nevertheless retain jurisdiction over issues involving great public interest. A public interest exception may be invoked upon the showing of three elements: 1) the issue involves a question of great public importance; 2) the factual situation precipitating the issue is likely to recur; and 3) the issue arises in a context which will continue to evade review. *In re Utley*, 565 N.E.2d at 1155. Buck Creek has presented no argument on this exception, and therefore, we will not consider it further.