## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED
Oct 14 2015, 9:31 am

CLERK
of the supreme court,
court of appeals and
tax court

| ATTORNEY FOR APPELLANT | ATTORNEY FOR APPELLEE |
|---|---|
| Amy L. Cueller | Norman L. Reed |
| The Cueller Law Office | The Law Office of Norman Reed |
| Indianapolis, Indiana | Indianapolis, Indiana |

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Sylvia M. Rodriguez, *Appellant-Plaintiff,* | October 14, 2015 |
| | Court of Appeals Case No. 49A02-1412-CT-820 |
| v. | Appeal from the Marion Superior Court. |
| | The Honorable Robert R. Altice, Jr., Judge. |
| John R. Wyse, *Appellee-Defendant.* | Cause No. 49D05-1201-CT-1344 |

**Friedlander, Senior Judge**

[1] Sylvia M. Rodriguez appeals from a jury's verdict against her in a breach of contract claim she brought against John R. Wyse, contending that the trial court erred by denying her motion for summary judgment and allowing the matter to proceed to trial. We affirm.

[2] Rodriquez entered into a conditional sales contract with Wyse for the purchase of his home located in Indianapolis. At the time Rodriguez signed the contract, she was accompanied by her friend, Chico Quiros, who is bi-lingual and who interpreted the contract for her because she does not speak, read, or write English. Also present was Rodriguez's boyfriend, Ranulfo Ocampo.

[3] The purchase price for the home was $50,000.00, with a down payment of $5,000.00. Rodriguez agreed to pay monthly payments of $525.00, which included $50.00 per month for estimated taxes and $50.00 per month for insurance. Rodriguez made sixteen payments toward the purchase of the house. Some of the payments were made on time, others were not timely, and the last payment was not a complete monthly payment.

[4] On December 27, 2011, a fire occurred which caused damage to the house. The day after the fire, Rodriguez and Ocampo met with a representative of Nationwide Insurance Company. In 1997, Wyse had purchased an Allied Group Insurance Homeowner's Policy for his home from Darryl Gadberry, an agent for AMCO/Allied Group Insurance Company, subsidiaries of Nationwide. Once Gadberry became aware that Wyse had moved from the property and began using it as a rental property, he cancelled the old policy and issued a new one with AMCO in March 1999 insuring the dwelling structure but not the personal contents. This policy was in effect at the time of the fire. Rodriguez learned in her meeting with the representative of Nationwide that Wyse and not Rodriguez was the named insured on the AMCO policy.

[5] On January 12, 2012, Rodriguez brought suit against Wyse and AMCO Insurance Company for breach of contract and negligent misrepresentation, seeking recovery of the insurance proceeds less the remaining balance on the contract plus interest and a temporary restraining order to prevent AMCO from paying the insurance proceeds to Wyse. The trial court granted Rodriguez's petition for temporary restraining order, and ordered AMCO to tender the insurance proceeds of $86,690.00 to the Marion County Clerk. AMCO did so and was eventually dismissed from the action.

[6] On May 31, 2013, Rodriguez filed her motion for summary judgment against Wyse seeking a judgment in her favor for $185,950.00. Wyse responded to Rodriguez's motion, which included his counterclaims against Rodriguez for breach of contract and tortious interference with his insurance contract. He also sought partial summary judgment in relation to his counterclaims.

[7] The trial court set the motions for hearing, after which the trial court entered its order denying Rodriguez's motion for summary judgment and Wyse's motion for partial summary judgment finding that there remained genuine issues of material fact. The trial court's order granted in part Rodriquez's motion to strike certain evidence designated by Wyse in support of his own motion for partial summary judgment and in response to Rodriguez's motion for summary judgment.

[8] PNC Bank, N.A., who was not a party to the litigation, filed a motion to intervene in the action, asserting an interest in the AMCO insurance proceeds.

PNC claimed that the promissory note entered into with Wyse, which was secured by a mortgage on the house, was the basis for its interest in the proceeds.

[9] The matter proceeded to a jury trial on November 5, 2014. At the conclusion of the trial, the jury returned a verdict in favor of Wyse and against Rodriguez on her breach of contract claim, making no monetary award to Wyse or any decision concerning the disbursement of the insurance proceeds. The trial court entered judgment on the jury's verdict that same day. On December 2, 2014, Rodriguez filed her notice of appeal from the trial court's denial of her motion for summary judgment.

[10] On December 5, 2014, Rodriguez filed a motion for emergency stay pending appeal, which this Court granted in part and denied in part on December 17, 2014. The trial court was ordered to stay the disbursement of the AMCO insurance proceeds as to Wyse but directed the court to disburse $16,502.11 to PNC. Insurance proceeds totaling $70,187.89 remain with the Marion County Clerk pending resolution of this appeal. PNC was allowed to intervene in this appeal and asks this Court to allow the prior disbursement to it to be affirmed.

[11] Rodriguez claims that the trial court erred by denying her motion for summary judgment and allowing the matter to proceed to trial. In an Indiana summary judgment proceeding, "the party seeking summary judgment must demonstrate the absence of any genuine issue of fact as to a determinative issue, and only then is the non-movant required to come forward with contrary evidence."

*Jarboe v. Landmark Cmty. Newspapers of Ind., Inc.*, 644 N.E.2d 118, 123 (Ind. 1994). T.R. 56(C) provides in pertinent part:

> At the time of filing [a] motion [for summary judgment] or response, a party shall designate to the court all parts of pleadings, depositions, answers to interrogatories, admissions, matters of judicial notice, and any other matters on which it relies for purposes of the motion. A party opposing the motion shall also designate to the court each material issue of fact which that party asserts precludes entry of summary judgment and the evidence relevant thereto. The judgment sought shall be rendered forthwith if the designated evidentiary matter shows that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.

Summary judgment should not be entered where material facts conflict or where conflicting inferences are possible. *Miller v. Monsanto Co.*, 626 N.E.2d 538 (Ind. Ct. App. 1993). When we review the grant or denial of a motion for summary judgment our standard of review is the same as that used by the trial court. *J.C. Spence & Assocs., Inc. v. Geary*, 712 N.E.2d 1099 (Ind. Ct. App. 1999). We must determine whether there is a genuine issue of material fact and whether the moving party is entitled to judgment as a matter of law. *Id.* In resolving those inquiries, we consider only the evidence that has been specifically designated to the trial court. *Id.* The party appealing the trial court's ruling has the burden of persuading this court that the trial court's decision was erroneous. *Id.* A summary judgment determination shall be made from any theory or basis found in the designated materials. *Id.* "We give careful scrutiny to the pleadings and designated materials, construing them in a light most favorable to the non-movant." *Id.* at 1102 (quoting *Diversified Fin.*

*Sys., Inc. v. Miner*, 713 N.E.2d 293, 297 (Ind. Ct. App. 1999)). The fact that the parties make cross-motions for summary judgment does not alter our standard of review. *Wank v. Saint Francis College*, 740 N.E.2d 908 (Ind. Ct. App. 2000), *trans. denied*.

[13] The trial court's denial of Rodriguez's motion for summary judgment is correct for a number of reasons as there were genuine issues of material fact that precluded entry of summary judgment.

[14] The conditional sales contract provided under section four that Rodriguez, the purchaser, would "maintain all taxes and insurance on said property until all payments have been paid in full to the seller." Appellant's App. p. 52. Under section twelve of the contract, Wyse, the seller, agreed to "purchase fire and dwelling insurance on said property and be responsible for all tax payments" during the term of the contract. *Id.* at 53. The parties also signed a document explaining the components of the monthly payments, which included $50.00 for taxes and $50.00 for insurance. *Id.* at 54.

[15] Rodriguez alleged in her complaint that Wyse was in breach of contract by failing to pay Rodriguez the proceeds of the insurance policy less the unpaid balance due on the contract plus interest. She further alleged that Wyse was in breach of the contract by failing to purchase an insurance policy covering Rodriguez's personal property in the first place.

[16] Rodriguez designated her own affidavit in support of her motion. In paragraph thirteen of her affidavit, she stated that at the time she signed the contract she

wanted to purchase her own homeowner's policy to insure the house and her personal property. *Id.* at 41. She further stated that Wyse told her that she needed to pay him for the insurance he already had obtained for the house, also indicating that she need not buy additional insurance. Rodriguez also claimed that she would not have paid Wyse each month for insurance had she known that she was not a named insured on the policy and that the coverage Wyse obtained on the house was as a rental property with no coverage for personal belongings.

[17]     Rodriguez also designated Ocampo's affidavit in support of her motion. *Id.* at 51. In paragraph three of Ocampo's affidavit he stated that he was present when Wyse insisted that Rodriguez include the cost of the house insurance in her monthly payment because Wyse already had insurance coverage for the house. Ocampo claimed that Wyse told Rodriguez that there was no need for her to purchase additional insurance. He further stated that he was present when Rodriguez met with Gadberry and learned at that time that Rodriguez was not a named insured on the policy.

[18]     Wyse, in response to Rodriguez's motion and in support of his own motion, designated his affidavit. *Id.* at 93. Wyse claimed that at the time the contract was signed, he informed Rodriguez, Ocampo, and Quiros that the insurance covered only the dwelling. He stated that he told Rodriguez she would have to purchase her own renter's insurance in order to insure her personal property. He also stated that Rodriguez discussed getting renter's insurance with Ocampo and Quiros, but decided not to do so. He further stated that he did not tell

Rodriguez that she would be a named insured on the policy he had purchased, specifically explaining to her that his mortgage company required him to have dwelling and fire insurance on the house. Wyse indicated that on several occasions after the contract signing, he told Ocampo that the insurance did not cover their personal property and advised them to obtain renter's insurance, which could be purchased at little cost.

[19] Wyse also designated the affidavit of his ex-wife, Karen Wyse, in support of his response to Rodriguez's motion and his own motion. *Id.* at 101. In her affidavit, Karen stated that she was present on an occasion shortly after the contract was signed when Wyse called Ocampo and explained that Wyse's insurance would not cover Rodriguez and Ocampo's personal belongings.

[20] The contract did not contain a provision establishing the requirements that Wyse name Rodriguez as an insured on the policy, or that he obtain insurance coverage for her personal property. The contract also did not contain a provision that Wyse must pay the insurance proceeds less the balance due on the contract to Rodriguez. Additionally, the affidavits of Wyse, his ex-wife, Karen, Ocampo, and Rodriguez establish genuine issues of material fact which preclude the entry of summary judgment on Rodriguez's complaint. The trial court did not err by denying Rodriguez's motion for summary judgment.

[21] Next, Wyse claims on cross-appeal that the trial court erred by denying his motion for partial summary judgment. In his motion for partial summary

judgment Wyse claimed entitlement to the balance remaining on the conditional sales contract, or $38,400.00.

[22] We first observe that Wyse prevailed at trial and the balance remaining with the Marion County Clerk is more than sufficient to satisfy the remaining balance due on the contract. "An issue is deemed moot when it is no longer 'live' or when the parties lack a legally cognizable interest in the outcome of its resolution." *Jones v. State*, 847 N.E.2d 190, 200 (Ind. Ct. App. 2006), *trans. denied*. "Stated differently, when we are unable to provide effective relief upon an issue, the issue is deemed moot, and we will not reverse the trial court's determination 'where absolutely no change in the status quo will result.'" *Id.* (quoting *In re Utley*, 565 N.E.2d 1152, 1155 (Ind. Ct. App. 1991)). We will not reverse the trial court's denial of Wyse's motion for partial summary judgment on this issue.

[23] In Wyse's motion, he also challenged Rodriguez's allegation of negligent misrepresentation with respect to insurance coverage, contending that he was entitled to summary judgment on that issue as well. Wyse also challenges that claim on appeal. In Rodriguez's reply brief, she contends that the issue is moot because that claim was withdrawn prior to trial. Reply Br. p. 4. The Chronological Case Summary included in the Appellant's Appendix does not provide this Court with an entry verifying Rodriguez's assertion. Nonetheless, the jury verdict, which is included in the Appellant's Appendix at page 123, reflects a jury verdict "in favor of the Defendants, John R. Wyse and Karen

Wyse, and against the Plaintiff, Sylvia M. Rodriguez on her breach of contract claim."

[24] Consequently, Wyse did not suffer a judgment against him on Rodriguez's negligent misrepresentation claim. We find no error here as negligent misrepresentation claims, while recognized as tort claims in Indiana, are generally applied to only those individuals whose primary function is to render a professional opinion. *See, e.g.*, *Indianapolis- Marion Cnty. Pub. Library v. Charlier Clark & Linard, P.C.*, 929 N.E.2d 722 (Ind. 2010) (claim brought against engineering subcontractors); *U.S. Bank, N.A. v. Integrity Land Title Corp.*, 929 N.E.2d 742 (Ind. 2010) (claim brought against title insurance company and title commitment issuer); *Greg Allen Constr. Co. v. Estelle*, 798 N.E.2d 171 (Ind. 2003) (claim brought against construction corporation and corporation's president).

[25] Wyse also contends that Rodriguez's counsel should be sanctioned under both the trial and appellate rules for certifying that there is good ground to support the pleading signed. Wyse focuses specifically on the negligent misrepresentation claim. Indiana Trial Rule 11 grants the trial court discretion to impose sanctions where a motion is determined to contain information the attorney knows to be false. Ind. Trial Rule 11; *Zwiebel v. Zwiebel*, 689 N.E.2d 746 (Ind. Ct. App. 1997), *trans. denied*. Indiana Appellate Rule 66(E) permits this Court to assess damages if an appeal is frivolous or in bad faith and may include an award of attorney fees. "A strong showing is required to justify an award of appellate damages, and the sanction is not imposed to punish mere lack of merit, but something more egregious." *Harlan Bakeries, Inc. v. Muncy*,

835 N.E.2d 1018, 1038 (Ind. Ct. App. 2005) (quoting *Manous, LLC v. Manousogianakis*, 824 N.E.2d 756, 767-68 (Ind. Ct. App. 2005)).

[26] The record before us does not support a finding that Rodriguez's counsel signed a pleading containing allegations known to be false. Additionally, even though Rodriguez did not prevail in the trial court or here on appeal, we are not led to the conclusion that something more egregious than an argument lacking merit occurred in this appeal such that sanctions are warranted. We decline to enter the requested sanctions.

[27] Last, the trial court correctly released payment from the insurance proceeds to PNC. We find no error in that decision.

[28] Judgment affirmed.

Baker, J., and Brown, J., concur.