## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



**FILED**

Aug 13 2018, 7:31 am

**CLERK**
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Susan D. Rayl
Smith Rayl Law Office, LLC
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Monika Prekopa Talbot
Supervising Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Mark B. Howard, <br> *Appellant-Defendant,* <br><br> v. <br><br> State of Indiana, <br> *Appellee-Plaintiff.* | August 13, 2018 <br><br> Court of Appeals Case No. <br> 49A04-1711-CR-2601 <br><br> Appeal from the Marion Superior Court <br><br> The Honorable Marc T. Rothenberg, Judge <br><br> Trial Court Cause No. <br> 49G02-1509-F2-32201 |

**Barteau, Senior Judge.**

## Statement of the Case

[1] Appellant Mark B. Howard appeals the terms of his release on bail and his sentence. We affirm.

# Issues

Howard presents two issues for our review, which we restate as:

I. Whether the trial court erred by altering the conditions of Howard's bail.

II. Whether Howard's sentence is inappropriate.

# Facts and Procedural History

Howard and Amber Brown were involved in a relationship for several years, and they have a son together. Once their relationship ended in 2014, Howard and Amber stayed in contact with one another because of their son. At some point after ending her relationship with Howard, Amber became friends with a man named Will. Howard became very upset when he learned of Amber's friendship with Will, and, throughout the day of September 8, 2015, he sent threatening text messages to Amber.

Due to the threatening nature of Howard's messages, Amber planned to stay somewhere else that night. Amber asked her brother, Lee, to accompany her and her son to her apartment so she could gather some clothes and things. Once they had entered the apartment and shut and locked the door, someone began kicking in the door. Amber yelled for her brother who was in the other room and then took her son to a room at the back of the apartment. As Lee was nearing the front door of the apartment and Amber was heading to the back of the apartment with her son, they both saw an arm and a gun appear in the open doorway. Lee pulled out his handgun and began firing. He then

walked to the door and recognized the person on the floor as Howard. Amber called the police, and Howard asked Lee to hide his gun.

[5] Based upon this incident, the State charged Howard with attempted murder, a Level 1 felony;[1] burglary, a Level 2 felony;[2] intimidation, a Level 6 felony;[3] and carrying a handgun without a license, a Level 5 felony.[4] Following a jury trial on these charges, Howard was found guilty of burglary, intimidation, and carrying a handgun without a license. The trial court sentenced him to an aggregate sentence of twenty-five years with five years suspended. Howard now appeals.

# Discussion and Decision

## I. Conditions of Bail

[6] Howard contends the trial court erred by altering the conditions for his bail. Particularly, he claims that, after he was released on bond, the trial court granted the State's request for the additional conditions of home detention and GPS monitoring without a showing of good cause as required by Indiana Code section 35-33-8-5 (2004).

---

[1] Ind. Code § 35-42-1-1 (2014).

[2] Ind. Code § 35-43-2-1 (2014).

[3] Ind. Code § 35-45-2-1 (2014).

[4] Ind. Code § 35-47-2-1 (2014).

[7] The State argues this issue is moot. Indeed, Howard concedes in his brief that "there [is] nothing that this Court can now do to correct the trial court's error." Appellant's Br. p. 12. Nonetheless, he maintains that the issue should be addressed.

[8] An issue is deemed moot when it is no longer "live" or when the parties lack a legally cognizable interest in the outcome. *Jones v. State*, 847 N.E.2d 190, 200 (Ind. Ct. App. 2006), *trans. denied*. "Stated differently, when we are unable to provide effective relief upon an issue, the issue is deemed moot, and we will not reverse the trial court's determination 'where absolutely no change in the status quo will result.'" *Id.* (quoting *In re Utley*, 565 N.E.2d 1152, 1154 (Ind. Ct. App. 1991)). An issue that is otherwise moot may nevertheless be decided on its merits if it involves a question of "great public interest." *Mosley v. State*, 908 N.E.2d 599, 603 (Ind. 2009). Such cases raise important policy concerns and present issues that are likely to recur. *Id.* Any decision we would render in this case would result in no change in the status quo for Howard. Further, this issue does not present an important policy question. Accordingly, we decline to address this issue because it is moot.

## II. Inappropriate Sentence

[9] Next, Howard asserts his sentence is inappropriate in light of the nature of his offense and his character. Howard appeals his sentence only as to his burglary conviction.

[10] Although a trial court may have acted within its lawful discretion in imposing a sentence, article VII, sections 4 and 6 of the Indiana Constitution authorize independent appellate review and revision of sentences through Indiana Appellate Rule 7(B), which provides that we may revise a sentence authorized by statute if, after due consideration of the trial court's decision, we determine that the sentence is inappropriate in light of the nature of the offense and the character of the offender. *Thompson v. State*, 5 N.E.3d 383, 391 (Ind. Ct. App. 2014). However, "we must and should exercise deference to a trial court's sentencing decision, both because Rule 7(B) requires us to give 'due consideration' to that decision and because we understand and recognize the unique perspective a trial court brings to its sentencing decisions." *Stewart v. State*, 866 N.E.2d 858, 866 (Ind. Ct. App. 2007). The principal role of appellate review under Rule 7(B) is to attempt to leaven the outliers, not to achieve a perceived "correct" result in each case. *Garner v. State*, 7 N.E.3d 1012, 1015 (Ind. Ct. App. 2014). In other words, the question under Appellate Rule 7(B) is not whether another sentence is *more* appropriate; rather, the question is whether the sentence imposed is inappropriate. *King v. State*, 894 N.E.2d 265, 268 (Ind. Ct. App. 2008). The defendant bears the burden of persuading the appellate court that his or her sentence is inappropriate. *Childress v. State*, 848 N.E.2d 1073, 1080 (Ind. 2006).

[11] To assess whether the sentence is inappropriate, we look first to the statutory range established for the class of the offense. Here, the offense is a Level 2 felony burglary, for which the advisory sentence is seventeen and one-half

years, with a minimum sentence of ten years and a maximum of thirty years. Ind. Code § 35-50-2-4.5 (2014). Howard was sentenced to an aggregate term of twenty-five years with five years suspended. The trial court ordered that he serve eighteen years in the DOC and two years on home detention for his conviction of burglary.

[12] Next, we look to the nature of the offense and the character of the offender. As to the nature of the burglary offense, we note that to commit this offense, Howard equipped himself with a ski mask and a gun. Armed with the gun, he kicked in the door of the apartment where his seven-year-old son resided and committed this offense in the presence of his son while also putting his son in grave danger.

[13] With regard to the character of the offender, we observe that at age twenty-eight Howard had already amassed a noteworthy criminal history. As a juvenile, Howard had several interactions with the juvenile system, two of which resulted in formal proceedings. In one instance, he participated in a diversion program for an offense that, if committed by an adult, would be battery resulting in bodily injury with a prior offense, a Class D felony. In another, Howard was charged with offenses that, if committed by an adult, would constitute resisting law enforcement as a Class D felony, resisting law enforcement as a Class A misdemeanor, and reckless driving as a Class B misdemeanor. These charges resulted in a true finding for resisting law enforcement as a Class D felony, for which Howard completed community service work and formal probation.

[14] At age eighteen, Howard commenced his adult criminal history with the charges of theft, as a Class D felony; battery as a Class A misdemeanor; criminal mischief, as a Class B misdemeanor; and criminal conversion, as a Class A misdemeanor. He was convicted of theft and two counts of misdemeanor battery. Subsequently, his probation was revoked for violations including committing an additional criminal offense, submitting diluted urine drug screens, failing to report to probation, failing to pay court ordered fees, and submitting a drug screen positive for THC. He was ordered to serve 120 days in DOC, 120 days on work release, and 120 days on home detention. He later violated the conditions of his community corrections placement.

[15] From 2010 to 2015, Howard steadily committed new offenses. He accumulated convictions for possession of marijuana, as a Class A misdemeanor; driving while suspended with a prior, as a Class A misdemeanor; two counts of theft, as Level 6 felonies; criminal recklessness with a deadly weapon, a Level 6 felony; and leaving the scene of an accident, as a Class B misdemeanor. In addition, charges of felony and misdemeanor domestic battery as well as misdemeanor battery were filed but dismissed, and charges of felony distributing hallucinogenic substance or marijuana, misdemeanor use/possession of drug paraphernalia, and a misdemeanor vehicular offense were apparently filed but resolved with an unknown disposition. Moreover, it was alleged that Howard violated his probation by failing to comply with community service and failing to pay his financial obligations.

[16] The significance of a criminal history in assessing a defendant's character and an appropriate sentence varies based on the gravity, nature, and proximity of prior offenses in relation to the current offense, as well as the number of prior offenses. *Sandleben v. State*, 29 N.E.3d 126, 137 (Ind. Ct. App. 2015), *trans. denied*. Here, in addition to juvenile offenses, Harold has at least four felony convictions and at least five misdemeanor convictions, some of which involve violence. In addition, Howard was out on bond for another offense at the time he committed the current offenses, and, during his trial, he violated the no contact order that was in place with regard to Amber. Both of these circumstances may be considered by the court as aggravating factors. *See* Ind. Code § 35-38-1-7.1 (5), (6) (2015).

[17] Furthermore, Howard made it clear he felt no remorse for his actions. Exhibit 1 from his sentencing hearing is the recording of a phone call he made from jail to a female the night of his trial in which he spoke of Amber, referring to her as a "bitch" and making disparaging comments about her glasses and her weight. Ex. 1. He laughed about how he had been "mean mugging" Amber and her mother through the trial and was told to stop by his attorney, and he stated that he was disappointed that Amber's mother was absent from the courtroom when the not guilty verdict was read for the attempted murder charge because he wanted to give her a big smile. *Id.* He also referred to his similarity to Charles Manson in his dealings with Amber and stated he did not care that the court revoked his bond because he had "smoked weed" and had sex all night the night before. *Id.*

[18] The State read statements from both Amber and her mother, which told of Amber and Howard's violent relationship. Amber described their relationship as a "very abusive, toxic relationship." Tr. Vol. 3, p. 39. The women recounted instances of Howard taking Amber's clothes and shoes, bleaching her clothes, and chasing her on a dirt bike.

[19] After hearing the evidence, the trial court characterized Howard's actions as driven by a desire to terrorize Amber. The court noted that by these acts Howard directly exposed his son to the toxicity and violence of his relationship with Amber, that he had another criminal case pending at the time of these acts, and that the phone call from jail showed a complete lack of remorse. In characterizing the phone call, the trial court stated, "there is a bravado about you in this conversation which to me is mind blowing just hours after you're convicted of a Level 2 Burglary." *Id.* at 57. The trial court also remarked, "You are something. I can characterize what you are. You're a dangerous person whether that's because of your emotional state, whether that's because of your mental health, whether it's because of a toxic relationship — and I can go on and on with the excuses that I've heard from you in your presentence investigation or from you today or from you on this phone call. It doesn't matter. The fact is I stand by my first statement. You're a terrible person." *Id.* at 56-57.

[20] On appeal, Howard argues for a reduced sentence, citing his limited criminal history and that he "likely suffers from mental illness." Appellant's Br. p. 14. As discussed above, Howard's criminal history is not "limited" but, rather, is

extensive. Additionally, no evidence links Howard's crimes and a mental illness. *See Corralez v. State*, 815 N.E.2d 1023, 1026 (Ind. Ct. App. 2004) (stating there must be nexus between defendant's mental health and crime in question in order for mental history to be considered mitigating factor). Nonetheless, the trial court ordered a mental health evaluation and treatment.

# Conclusion

[21] For the reasons stated, we conclude that Howard's sentence is not inappropriate given the nature of the offense and his character.

[22] Affirmed.

Mathias, J., and Pyle, J., concur.